479 A.2d 573

**Gene O. BROWN**

v.

**Carol Louise BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 27, 1984.

Filed June 22, 1984.

326

James B. Yelovich, Somerset, for appellant.

James R. Di Francesco, Johnstown, for appellee.

Before CAVANAUGH, WICKERSHAM and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that she has a joint interest in the coins collected by appellee, her husband, prior to their marriage. She argues that appellee, by putting the coins into jointly held safe deposit boxes after their marriage, created an inter vivos gift in her favor. Because the requirements for a valid gift were not met in this case, we affirm.

The parties were married in June, 1964, and have five children. On June 25, 1979, they separated subsequent to appellant's filing a petition for protection from abuse and appellee's court-ordered eviction from the family residence. On July 5, 1979, appellant removed a coin collection from the parties' jointly held safe deposit boxes at Johnstown Bank & Trust. Consequently, appellee filed an action for replevin of the coins in January, 1980. Following a June 24,

1981, non-jury trial, the lower court entered the following order on April 14, 1982: (1) those coins owned by appellee at the time of his marriage to appellant are his property and must be returned to him forthwith; (2) those coins purchased during the marriage are to be held in trust by appellant's attorney for proper distribution in the parties' divorce action;[1] and (3) the parties (and their counsel) are to meet within 30 days to make the division. This appeal followed.

In determining whether a tenancy by the entireties has been created, the intention of the husband and wife is controlling and will be given effect. *Uccellini v. Uccellini,* 423 Pa. 273, 223 A.2d 694 (1966); *Brenner v. Sukenik,* 410 Pa. 324, 189 A.2d 246 (1963). Our Supreme Court has outlined the principles of law which are applicable to an alleged gift of the contents of a jointly owned safe deposit box, as follows:

> To constitute a valid gift inter vivos of the contents of a safe deposit box, two essential elements are requisite: An intention to make an immediate gift, and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein. The burden of proof is upon the claimant to prove the gift by clear and convincing evidence: *Tomayko v. Carson,* 368 Pa. 379, 83 A.2d 907. Where an owner of a safe deposit box and his donee execute a contract or lease which recites that the property therein is the joint property of the lessees, with right of survivorship, and that the lessees acknowledge the receipt of two keys to said box—this creates a prima facie case of a valid inter vivos gift of a joint interest

1. The parties also have a divorce suit, 95 Divorce 1980, pending in this matter. In that suit, after a hearing and argument, the lower court on October 8, 1980, ordered that the divorce action proceed under the Divorce Code of 1980. Because of that ruling and the Code's marital property distribution provisions, the lower court recognized that its order in the present replevin action would have limited effect.

(with right of survivorship) in said property. The majority view appears to be that parol evidence is admissible (a) to prove an intention, or lack of intention, to make a gift as well as (b) delivery or failure of delivery, because the instrument is considered to be incomplete or (sometimes) equivocal.... However, it is established that the parol evidence which is necessary to disprove such gift must be clear, precise and ... [convincing]....

... [S]uch a contract creates a prima facie valid inter vivos gift of a joint interest (with right of survivorship) in all the property in said box, and the burden of proof shifts to the parties contesting the gift to prove a want of intention or a failure of delivery....

*Secary Estate*, 407 Pa. 162, 166–67, 180 A.2d 572, 574 (1962), *quoting King Estate*, 387 Pa. 119, 122–24, 126 A.2d 463, 465 (1956) (citations omitted). The fact that a safe deposit box is leased in the names of both the husband and wife is not of itself sufficient to establish joint ownership of the contents found therein which originally belonged to one of the lessees alone. *Christie Estate*, 436 Pa. 101, 105, 259 A.2d 156, 158 (1969); *Tomayko v. Carson*, 368 Pa. 379, 385, 83 A.2d 907, 909 (1951); *Wohleber's Estate*, 320 Pa. 83, 84–87, 181 A. 479, 480 (1935).

In *King Estate, supra,* our Supreme Court held that the evidence supported finding a completed inter vivos gift of stocks and bonds contained in a safe deposit box because (1) the safe deposit box contract provided that the lessees were joint tenants and that all property put into the box would be the joint property of both lessees and, upon the death of either lessee, would pass to the survivor; (2) when the husband changed his safe deposit box contract with the bank from his name to that of himself and his wife, he told the bank custodian that he did not want his wife merely to have access, but that he wanted a joint contract; and (3) both parties possessed keys to the box and had separately exercised their respective right of access to the box. The Court noted that the language of the contract created a prima facie valid inter vivos gift of a joint interest in the

contents of the box and thereby shifted the burden of proof to the party contesting the gift to prove a want of intention or a failure of delivery by "clear, precise and indubitable" evidence. 387 Pa. at 123, 126 A.2d at 465.

In several other cases involving the contents of a jointly held safe deposit box, however, the Supreme Court has ruled that no valid inter vivos gift was created. In *Wohleber's Estate, supra,* the Court found that even if the presence of certain bonds in a safe deposit box leased in the names of both the husband and wife indicated prima facie joint ownership, such prima facie evidence could not prevail in the face of a showing that the bonds were in fact owned by the husband. The evidence showed that (1) the bonds were bought and paid for by the husband; (2) the husband clipped the coupons and made the deposits, sometimes in his own account and sometimes in the parties' joint account; and (3) the wife never exercised any acts of dominion or ownership over the bonds. The Court emphasized that the husband's exercise of acts of ownership occurred over a long period of time. In *Secary Estate, supra,* two brothers leased a safe deposit box under a contract which provided that the lessees were joint tenants and that all property put into the box would be the joint property of both and, upon the death of either, would pass to the survivor. After one brother died, the surviving brother contested the decedent's estate's sole right to the box's contents. The Court, noting that the contract shifted the burden of proof to the estate, held that the estate sustained its burden of showing a failure of delivery of the box and its contents to the surviving brother because (1) the decedent had entered the box on 33 separate occasions while the surviving brother had entered the box only twice—both times after the decedent's death and in the company of the decedent's widow; (2) both keys to the box had been kept in the decedent's home and the surviving brother never possessed a key; and (3) the contents of the box (stocks, bonds, lease) were all in the decedent's name and the surviving brother had never asserted that they were his individual property. In *Christ-*

*ie Estate, supra,* the contract for one safe deposit box provided that either lessee would have a right of access to the box and the contract for a second safe deposit box provided that each lessee was the owner of all present and future contents of the box. The Court ruled that the language of the leases was insufficient to create a gift from the husband to the wife and that evidence of the wife's possession of a key and occasional exercise of her right to access was not sufficiently clear and convincing to support her claim to ownership of the stock certificates registered in the husband's name and kept in the boxes. *See also Chadrow v. Kellman,* 378 Pa. 237, 106 A.2d 594 (1954) (claimant to contents of safe deposit box held in joint names of decedent and claimant did not establish ownership of contents under valid inter vivos gift because no actual or constructive delivery occurred where claimant never possessed key to box and never had access thereto).

In the instant case, appellee testified at trial that he began collecting coins in the summer of 1957 and that, after his 1964 marriage to appellant, he put his coin collection into a safe deposit box at the bank where he worked. He put both his and appellant's names on the box for inheritance tax purposes, *i.e.* if he died, the coins would be considered appellant's property without audit or taxes. Appellee continued to collect coins through his job at the bank, replacing coins of interest to collectors with pocket change of equal face value, and also through mail purchases of proof sets and commemorative coins from the U.S. Mint. He paid for the coins from the parties' joint checking account, into which only he made deposits because appellant had given up her job upon the birth of their first child. Although appellee told appellant where the keys to the box were and allowed appellant free access to the contents of the box, appellant never expressed any interest in the coins and never entered the box prior to July of 1979. Appellee therefore asserts that the coins, which have an estimated value of $35,000 are his sole and individual property. (N.T. June 24, 1981 at 4–26). Appellant, on the other hand, while

admitting that she never collected coins or contributed to appellee's coin collection, testified that when the parties married, she assumed that they would put both their names on everything and own everything together. She herself changed her individual bank account to a joint account after the marriage. Appellant testified that appellee showed her where the key to the box was located in the event something happened to him so that she could have access to the box. She further testified that, after the parties separated in June, 1979, she went to the box, which also contained family papers, for the first time on July 3, 1979, to get the children's birth certificates because she was forced to apply for public assistance. She returned to the box two days later to take the coins because she feared that appellee would remove her name from the box and dispose of the coins, thereby leaving her with nothing. At that point, appellee had already taken appellant's name off the joint checking account. Appellant stated that the reason she did not contribute money to the family income was because she was home raising the parties' five children. (N.T. June 24, 1981 at 34–78).

 From these facts, the lower court concluded that appellee, by placing appellant's name on the safe deposit box, did not thereby make a gift of his coins to her. We agree. Unlike the safe deposit box lease executed in *King Estate, supra,* the instant rental agreement, although designated a joint account and signed by both parties on January 16, 1976, did not expressly provide that the property in the box was to be the joint property of both lessees, with right of survivorship; therefore, the burden remained on appellant to prove by clear and convincing evidence that appellee had the intention to make an immediate gift of a joint interest in the coins and that there was actual or constructive delivery. In the above-cited cases, our Supreme Court has said that the fact of a jointly leased safe deposit box is not of itself sufficient to create joint owner-

ship in its contents. Instead, the Court has required the claimant to have at least exercised his or her right of access to the box during the alleged joint ownership. *See King Estate, supra,* and *Secary Estate, supra.* Even where the claimant has sought occasional access to the box, the Court has indicated that that may still not be enough to prevail over the alleged donor's clear ownership of the disputed contents of the box. *See Christie Estate, supra.* Like the husband in *Wohleber's Estate, supra,* the instant appellee originally owned the disputed property, bought and paid for the property, and maintained it over a long period of time while his spouse never exercised any acts of dominion or ownership over the property. Therefore, the evidence does not support a finding that a valid gift was made.

■■■ It is not clear from the testimony whether appellee intended the coins to become appellant's property immediately upon his putting them into the safe deposit box or only upon the event of his death in order to avoid inheritance taxes.[2] We find it reasonable to conclude, however, that it was not the intention of the parties to give appellant immediate ownership rights in the coin collection. Therefore, in light of the aforementioned caselaw, we hold that appellant has failed to meet her burden of proving by clear and convincing evidence that appellee created a valid inter

2. On cross-examination, appellee testified that, by placing the coins in the safe deposit boxes and having the boxes in joint names, he did not intend to give appellant an interest in the coins. (N.T. June 24, 1981 at 21). Upon further questioning, appellee indicated that, in order to avoid the tax impact, he put the coins in the jointly held safe deposit boxes and they became appellant's property thereby. (N.T. June 24, 1981 at 22). The lower court concluded that appellee put appellant's name on the boxes so that, in the event of his death, appellant could take the coins out without any problem. (N.T. June 24, 1981 at 24).

Although a tax avoidance motivation may suggest a donative intent, *Clay v. Keiser,* 460 Pa. 620, 626–27 n. 3, 334 A.2d 263, 266 n. 3 (1975), it is ultimately immaterial to the court's determination that a gift was or was not effected. *Cohen v. Tonkin,* 358 Pa. 422, 425, 57 A.2d 840, 842 (1948).

vivos gift of a joint interest in the coins collected by appellee prior to their marriage and, accordingly, affirm the order of the court below.[3]

Affirmed.

**3.** We also reject appellant's contention that the parties had an implied contract to hold all their property jointly. A contract implied in fact "is an *actual* contract ... which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." *Cameron v. Eynon,* 332 Pa. 529, 532, 3 A.2d 423, 424 (1938) (emphasis in original). From the facts of this case, we are unable to infer that the parties agreed to hold *all* their property, particularly the coin collection, jointly after their marriage.