582 A.2d 11

**Nathan I. RAIKEN, Co-Executor of the Estate of Martin C. Mellon, Deceased, and Nancy Erhardt, Co-Executor of the Estate of Martin C. Mellon, Deceased, Appellants,**

**v.**

**Jane MELLON, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 6, 1990.

Filed Nov. 5, 1990.

Rochelle B. Fieldcamp, Philadelphia, for appellants.

Charles K. Plotnick, Elkins Park, for appellee.

Before OLSZEWSKI, DEL SOLE and HUDOCK, JJ.

OLSZEWSKI, Judge:

This is an appeal by the co-executors of the decedent's estate from a final decree in equity entered by the Court of Common Pleas of Montgomery County, granting sole ownership of certain real estate and bonds in appellee, Jane Mellon. We are now asked to decide whether the provisions of a prenuptial agreement entered into between appellee and her deceased husband, Martin Mellon, prevent the creation of a tenancy by the entireties in both the subsequently acquired real estate and bonds. Appellants, co-executors of the estate of Martin C. Mellon, contend that the prenuptial agreement between appellee and decedent prevents the creation of a tenancy by the entireties with respect to the questioned property, absent a sufficient writing to the contrary. Appellants also contend that the evidence offered by appellee to substantiate the transactions was insufficient under the terms of the agreement.[1] Accordingly, appellants would ask that we reverse the decree and award judgment in their favor. For the following reasons, we affirm the judgment of the trial court.

Martin C. Mellon and Jane Mellon, prior to their marriage, entered into a prenuptial agreement which provides in pertinent part:

3. The parties desire that all property presently owned by either of them or acquired by either of them hereafter

---

1. We need not consider whether the documentation of the sales transactions is sufficient to constitute an express written agreement under the terms of the prenuptial agreement, as we decide that the prenuptial agreement has no effect upon the ownership of the assets in question.

of whatsoever nature and wheresoever located and all income derived therefrom and all increases in the value thereof, shall be and remain their respective separate property. The parties agree that at no time during their relationship shall there be any transmutation of any of their separate property interests into jointly owned property, nor shall any of each party's separate property be put in such form as it shall pass to any person other than Martin or Jane or any entity by operation of law at the death of either party, except by their express written agreement. The following events shall, under no circumstances, be evidence of any intention by either party of an agreement between the parties to transmute their separate property interests into jointly owned property or to transmute their separate income into joint income:

(a) the filing of joint tax returns;

(b) the designature of one party by the other as a beneficiary of his or her estate;

(c) the co-mingling by one party of his or her separate funds or property with jointly owned funds or property or with the separate funds or property of the other party;

(d) any oral statement by either party;

(e) any written statement by either party other than the express written agreement of transmutation;

(f) the payment from jointly held funds of any separate obligation, including but not limited to the payment of mortgage, interest or real property taxes on a separately owned residence or other separately owned real estate or personal property;

(g) the joint occupation of a separately owned or leased residence.

On March 17, 1983, Martin and Jane Mellon entered into a purchase agreement for an unimproved lot in Maryland. Both Mr. and Mrs. Mellon signed the agreement as the buyers of the real estate; however, nothing in the agreement itself indicates in what manner the parties intended to hold the land. Upon completion of the settlement, however, the language appearing on the deed purported to convey the

lot to both parties as tenants by the entireties. The funds for the purchase were obtained in equal shares from both parties. A vacation home later built on the lot was financed in the same manner.

Thereafter, on August 6, 1984, Martin Mellon purchased five Pennsylvania General Obligation Bonds with a face value of $5,000.00 each. The bonds were of the type known as "bearer bonds" which carry no designation as to ownership. The bonds were purchased solely with funds supplied by Martin Mellon; however, on the "Account Sheet" prepared by the securities representative who sold the bonds, it is noted that Martin and Jane Mellon owned the bonds as tenants by the entireties. The "Account Sheet", which serves as the sales invoice, does not require the signature of the buyer.

Following the death of Martin Mellon, appellants, as co-executors of his estate, notified Mrs. Mellon that they sought the return of one-half of the value of the real estate plus interest. A petition to show cause was filed in Montgomery County Orphan's Court on July 7, 1986. Appellee filed preliminary objections to the petition alleging a lack of jurisdiction over the matter as the situs of the land was in Maryland. On November 25, 1986, the court sustained the objections and entered a *decree nisi* to that effect. Following the denial of exceptions, appellants sought an appeal to this Court.

Thereafter, on February 19, 1987, appellee filed a petition directing appellants to file an inventory and account. Following an order granting the petition, appellants filed an account which listed one-half ownership of the real estate and ownership of the bonds. Appellee objected to the account in both regards. In the interim, on June 5, 1987, appellee sold the real estate for a net price of $177,204.97, with the proceeds being placed in escrow.

On October 9, 1987, a stipulation was reached by both parties with respect to the disputed assets. It was agreed that the previous notice of appeal to this Court be withdrawn. It was further agreed that the Orphan's Court of

Montgomery County shall have jurisdiction to determine the ownership of the real estate and the bonds. Following the taking of depositions, both parties then moved for summary judgment. On May 3, 1989, the Honorable Judge Albert Taxis denied appellants' motion but granted judgment in favor of appellee. Fashioning the order in the form of a *decree nisi*, the court gave the parties ten days in which to file exceptions. Appellants filed exceptions within this time period; however, the court on July 19, 1989, denied the same. After reducing this latest order to judgment, appellants filed the instant appeal.

Appellants contend that the prenuptial agreement entered into between the parties precludes joint ownership of property except where an express written agreement is involved. They argue that the purchase of the real estate at equal cost to each party, and the purchase of the bonds at sole cost to the deceased, do not effect a "transmutation" of separate marital property into jointly-held entireties property absent an express written agreement as required by the prenuptial agreement. It is argued that the real estate was purchased with the separate funds of each party and hence remains separate property under the prenuptial agreement. Likewise, appellants argue that because the bonds were purchased with the decedent's separate funds, they were his separate property to which his estate is now entitled.

Appellee contends that the prenuptial agreement, by its terms, does not prevent the acquisition of newly acquired property and does not preclude the formation of joint interests in such property. Though the agreement purports to require an express written agreement to allow the separate property of either spouse to be "transmuted" into joint property, appellee argues that the real estate and the bonds were never separate property of either spouse, thus the prenuptial agreement has no effect upon the ownership of either asset. We agree.

Prenuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts. *Simeone v. Simeone,*

581 A.2d 162, 165 (Pa.1990). When interpreting a prenuptial agreement, the court, as in dealing with an ordinary contract, must determine the intention of the parties. *Laub v. Laub*, 351 Pa.Super. 110, 115–17, 505 A.2d 290, 293 (1986). When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. *Id.* 505 A.2d at 293, *citing, Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982).

Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing. *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986); *Citizen Care v. Com., Dept. of Public Welfare*, 118 Pa.Commw. 397, 545 A.2d 455 (1988).

 In the instant case, the agreement is not entirely clear on its face. While the agreement does indeed purport to restrict the conversion of separate property into joint property, the contract is silent as to newly-acquired joint property. Nor does the agreement, on its face, prohibit the creation of joint interests. Accordingly, the trial court was free to consider other evidence and construe the document against the estate, whose co-executor drafted the prenuptial agreement. In so doing, the court found no prohibition regarding the acquisition of newly-acquired joint property, notwithstanding the terms of the agreement. Upon review, we cannot disagree and we find the construction utilized by the court entirely reasonable under the circumstances.

Having concluded that the prenuptial agreement does not prohibit a joint interest in newly acquired property, but only requires an express writing to transmute separate, pre-existing property into joint property, we have no difficulty in determining that a tenancy by the entireties had been created in the subsequently acquired real estate and bonds. Where property or an account is placed in the names of husband and wife, the creation of an estate by the entireties is presumed. *In re Holmes Estate*, 414 Pa. 403, 200 A.2d 745 (1964); *Margarite v. Ewald*, 252 Pa.Super. 244, 381 A.2d 480 (1977); *Brown v. Brown*, 352 Pa.Super. 267, 507

A.2d 1223, 1225 (1986). This presumption is not hindered by the fact that one spouse contributed the funds to purchase the property. *In re Holmes, supra,* 200 A.2d at 747; *Nachman v. Nachman,* 417 Pa. 389, 208 A.2d 247 (1965).

■ Instantly, the record is clear that both properties were intended to be held as joint tenancies by the entireties. Regarding the realty, the agreement of sale was entered into by both parties and, upon settlement, the deed conveyed to the Mellons noted that they held the property as tenants by the entireties. With regard to the bonds, the same is true. Shirley Blaufield, the securities representative who sold the bonds, testified that the decedent was the one who instructed her to title the bonds in the names of both parties as joint tenants with the right of survivorship. The invoice sent to the Mellons upon completion of the sale evidences this intent. Accordingly, we are in complete agreement with the trial court that the parties intended that both properties be held as tenants by the entireties. Therefore, the court did not err in determining sole ownership of the real estate and the bonds to be in appellee upon the death of the decedent.

Order affirmed.