620 A.2d 1146

CONSTITUTION BANK

v.

Robert P. OLSON and Edward C. Rorer & Co., Inc. and Paine Webber Incorporated and Merrill Lynch, Pierce, Fenner & Smith, Inc.

Appeal of Robert P. OLSON.

CONSTITUTION BANK

v.

Robert P. OLSON and Edward C. Rorer & Co., Inc. and Paine Webber Incorporated and Merrill Lynch, Pierce, Fenner & Smith, Inc.

Appeal of Robert P. OLSON & Elizabeth Q. Olson.

Superior Court of Pennsylvania.

Argued Sept. 2, 1992.

Filed Jan. 8, 1993.

Reargument Denied March 18, 1993.

136

Brian P. Flaherty, Philadelphia, for appellants.

Kathleen Kernaghan, Ridley Park, for Constitution Bank, appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

We are asked to review the orders of the Court of Common Pleas of Philadelphia County denying a petition to intervene and petition to dissolve an attachment by Elizabeth Q. Olson and Robert P. Olson, respectively. We reverse in part.

The record discloses that on May 24, 1991, the plaintiff, Constitution Bank, filed a complaint and confessed judgment against the defendant, Robert P. Olson, on his guarantee of a loan to Capital Management L.P. in the amount of $251,564.37.

In aid of execution, the plaintiff took Mr. Olson's deposition and learned that he had two accounts with Rorer & Co.: one was co-owned with his wife, Elizabeth Q. Olson, and the second was an individual retirement account (IRA). Olson also disclosed that he and his wife were co-owners of a joint account with Merrill Lynch, Pierce, Fenner & Smith, Inc.

The plaintiff then filed "Writs of Attachment" and "Interrogatories In Attachment" which were answered by Rorer and Merrill Lynch and disclosed that the account with Rorer was designated: "Robert P. Olson Elizabeth Q. Olson JTWROS" and held $159,516.72; and the IRA account was in Mr. Olson's name only and contained $40,995.68. Rorer also indicated that all cash and securities in the Olson accounts were in the custody of Paine Webber, Inc. In response to interrogatories, Paine Webber acknowledged that the Olsons had various accounts with it, one being "[a] joint account entitled Robert P. Olson & Elizabeth Q. Olson, J.T.W.R.O.S."

Likewise, Merrill Lynch confirmed in its answers to plaintiff's interrogatories that the defendant maintained a cash management account co-owned with his wife and captioned: "JTWROS" and valued at $20,545.43.

Thereafter, the plaintiff filed praecipes for entry of judgment against all of the garnishees for the full amounts held for Robert P. and Elizabeth Q. Olson. Mr. Olson responded with the presentment of a Petition to Dissolve Attachment & Request for Stay of Proceedings, the result of which was an order of court staying all execution proceedings and/or the enforcement of the confessed judgment.

On October 24, 1991, the plaintiff filed an "informal response" asserting that a presumption exists that property held by husband and wife, unless otherwise designated, is a tenancy by the entireties. However, the plaintiff urged that the "presumption" had been "overcome" with the Olsons' electing

to title their brokerage accounts as joint tenants with right of survivorship (JTWROS), and, as such, "they c[ould] not now seek to insulate these accounts from Mr. Olson's lawful creditors". Therefore, it asked that the stay be lifted.

Without any response by the Olsons, the court entered an order lifting the "stay" and the Petition to Dissolve Attachment was denied.[1] On or about November 12, 1991, Mr. Olson

1. A petition seeking reconsideration was filed by Olson, but was never ruled upon. See RR. 132a. Of interest, however, is Mr. Olson's assertion therein that:

11. . . .

    a.  Mr. and Mrs. Olson have been married for 20 years and during that entire period of time have always held their joint assets, personal and real, as tenants by the entireties. Mr. and Mrs. Olson have always owned every parcel of real property during their marriage jointly. They have each from time to time held certain assets individually, but when that was intended, it was done in that fashion expressly.

    b.  When the two accounts in question were opened, Mr. Olson, who was the person who dealt with the representations [sic] of Rorer and Merrill Lynch at the time the accounts were opened, in no way elected to change the manner in which he and his wife had always owned all of their joint assets. In fact, Mr. Olson, who is not a lawyer, does not know the legal meaning of the initials J.T.W.R.O.S., or the phrases "tenancy by the entireties", "joint tenancy with rights of survivorship," or "tenants in common".

    c.  At the time the accounts were opened he stated to the persons with whom he dealt that he wished to own the accounts with his wife, jointly, as a husband and wife. He understood that by so stating he would be owning them as he held all of his joint property with his wife, namely, in all respects with his wife, as husband and wife, entitled to all the benefits thereof under Pennsylvania law.

12. Plaintiff acknowledges that there is a presumption that property held by husbands and wives is held by the entireties in Pennsylvania and that that presumption must be overcome by a showing made by the party seeking to challenge that tenancy by clear and convincing evidence to show that it was not intended to be held that way.

13. Plaintiff has made absolutely no effort to show this other than demonstrating that the initials J.T.W.R.O.S. appear after the names of Mr. and Mrs. Olson in the titles of the accounts.

14. That does not constitute clear and convincing evidence that Mr. and Mrs. Olson made an election to change their practice adhered to throughout their entire marriage of holding their assets as tenants by the entireties.

15. On that basis, we urge the Court to reconsider its Order of October 31, 1991, and we request that the Court vacate its Order of October 31 and direct that the parties proceed in accordance with Pennsylvania Rule of Civil Procedure 209 and Philadelphia Rule 209 to establish the necessary factual record to allow the Court to make

filed a "Petition to Strike and/or Open Judgment, and Request for Stay of Proceedings", wherein it was alleged, as herein relevant, that the judgment against the garnishees be stricken because the accounts were entireties property and immune from execution. In the alternative, Olson contended that only one-half of the joint account funds were subject to attached since suit was instituted against Mr. Olson only. He sought a stay to avoid the harm that would be suffered if the entireties property were released claiming that "it may become unrecoverable." RR. 48a.

In a Memorandum of Law in support of the Petition, Olson alleged the accounts were entireties property "irrespective of whether the deposits [we]re payable to [them as] husband and wife or to husband or wife or [wa]s denominated a joint account or joint tenancy." And, "[a]t a minimum, the judgment should be opened and plaintiff should be required to demonstrate via clear and convincing evidence that the[y] intended to own the subject account[s] in a fashion other than as tenants by the entireties." RR. 51a.

In a "Supplemental Submission" to buttress the Petition, Olson asserted that, even assuming *arguendo* the accounts were not held by the entireties, under no circumstances did the record provide any basis for entering judgment for the entire amount held by Paine Webber and Merrill Lynch.

inquiry into the relevant factual dispute here, namely, whether or not there is clear and convincing evidence to show the Court that Mr. and Mrs. Olson intended to hold these assets as other than tenants by the entireties, a presumption to which they are entitled under Pennsylvania law.

16. Because there is a factual inquiry needed, the methods of resolving factual disputes set forth in the aforementioned Rules is the appropriate method and that should be permitted to work to allow the parties the due process accorded to them to resolve these issues. WHEREFORE, we respectfully request that the Court enter an Order vacating its decision of October 31, and request that the Court vacate its October 31, 1991 Order and direct plaintiff to file a response to the petition and that the parties proceed in accordance with Pennsylvania Rule 209 and Local Rule 209 and applicable other rules so that the Court may have a full factual record developed upon which to base its decision in the matter.

RR. 89a.

Following argument from counsel on November 20, 1991, all execution was stayed, except that the plaintiff was authorized to proceed to execute in an amount up to one-half of the judgments against any of the three garnishees.[2] On November 22, 1991, counsel for Mr. Olson filed a Petition to Intervene on behalf of Mrs. Olson on the ground that she was "being adversely affected by the determination and actions of the plaintiff in th[e] matter." And, inasmuch as her "rights in the property [we]re being prejudiced[,] ... intervention [wa]s appropriate ... because the determination of the action m[ight] affect a legally enforceable interest of [her's] in the accounts in question." RR. 183a–184a. Thereafter, by order of court dated January 15, 1992, all orders previously entered were vacated and Mrs. Olson's Petition to Intervene was denied.

Separate appeals having been perfected from the denial of the Petition to Dissolve Attachment and Petition to Intervene by Mr. and Mrs. Olson, respectively, the two were consolidated for review by this Court.

In advance of deciding the merits of Mrs. Olson's Petition to Intervene, we deem it prudent to address Mr. Olson's inquiry of whether the lower court erred in holding that assets held by husband and wife in joint names, followed by the letters "JTWROS", were not entireties property.

■ We start with the proposition that "[t]here is a sharp difference between joint estates and those held by a husband and wife." *In re Holmes' Estate,* 414 Pa. 403, 200 A.2d 745, 747 (1964); *Geist v. Robinson,* 332 Pa. 44, 1 A.2d 153, 155 (1938). An intention to create the entirety is assumed from the deposit of an asset in both the names of a husband and wife, without more, and from the fact of a marital relationship. See *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164, 172 (1966);

2. This November 20, 1991, order was issued by a judge other than the one who had heard the parties' prior petitions for relief. This change in judges was necessary because of the absence of the initial judge who had heard the matter and Mr. Olson's counsel's request to have the matter heard and disposed of, with a completion of the relief requested ruled upon when the original judge returned the following week. This was accomplished.

*In re Holmes' Estate,* supra; *In re Cribbs,* 411 Pa. 242, 191 A.2d 379, 382 (1963); *Brenner v. Sukenik,* 410 Pa. 324, 189 A.2d 246, 249 (1963); *In re Berkowitz' Estate,* 344 Pa. 481, 26 A.2d 296, 297 (1942); *Geist,* supra; *Raiken v. Mellon,* 399 Pa.Super. 192, 582 A.2d 11, 14 (1990); *Lowry v. Lowry,* 375 Pa.Super. 382, 544 A.2d 972 (1988); *Sutliff v. Sutliff,* 361 Pa.Super. 504, 522 A.2d 1144, 1148 (1987), rev'd on other grounds, 518 Pa. 378, 543 A.2d 534 (1988); *Madden v. Madden,* 336 Pa.Super. 552, 486 A.2d 401, 404–405 (1985).

■ Further, retention of a certificate, bank book or other evidence of ownership in real or personal property by one spouse, and his/her retention of the same without delivery to the other spouse, is sufficient to establish the property as entireties because the nature of the joint tenancy is peculiar to the husband and wife relationship and obviates the need to have delivery occur to the other non-possessing spouse to create the estate. *In re Holmes' Estate,* supra. Stated differently, "an estate by the entirety is a form of co-ownership in real and personal property held by a husband and wife with a right of survivorship. Its essential characteristic is that each spouse is seized per tout et non per my, i.e., of the whole or the entirety and not of a share, moiety, or divisible part." *In re Gallagher's Estate,* 352 Pa. 476, 43 A.2d 132, 133 (1945) (Citations omitted); *Wakefield v. Wakefield,* 149 Pa.Super. 9, 25 A.2d 841, 842 (1942).

■ The case law appears established in that the type of ownership which is created in property when a husband and wife are involved, regardless of how the relationship is denominated and in the absence of clear and convincing evidence to the contrary, is as tenants by the entireties.

In *Holmes' Estate,* supra, ownership of corporate stocks was in question, all of which were issued in the name of "W.W. Holmes and/or Helen E. Holmes". Admittedly, the names on the certificates were those of the decedent and his wife.

During the decedent's lifetime, the certificates were surrendered to the corporation without the wife ever having seen or handled them. New certificates were issued in the names of

the decedent and two nephews. Upon the decedent's death, his administrator listed the stock certificates as assets of the estate. The wife and nephews each filed exceptions which were denied. The wife alone filed an appeal from the decree.

Our Supreme Court distinguished the principles of law which surface when dealing with entireties property and a gift *inter vivos* to someone other than a spouse. In the latter circumstance, actual or constructive delivery of the property had to be established by clear, direct, precise and convincing evidence. However, in a husband and wife context, the "gift [wa]s presumed by reason of the nature of the joint tenancy which [wa]s peculiar to the husband and wife relationship", and delivery to the husband was considered delivery to both spouses. Also, the Court in *Holmes' Estate* wrote:

> Where property or an account is placed in the names of a husband and wife, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband. The placing of the property in both names, without more, creates an estate by the entireties. *It is their actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entireties* [.] In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be clear and convincing evidence to the contrary. Even where a husband places the property in both names without his wife's knowledge or consent, a valid gift occurs[.] Likewise, if a husband acquires property with his own funds, and places it in the names of himself and wife, this constitutes a gift and an estate by the entireties, even though he exclusively receives the income therefrom during his lifetime[.]
>
> The same principles apply whether real estate, personal property or stocks and securities are involved.

414 Pa. at 405, 200 A.2d at 747 (Citations omitted; emphasis added).

To the same effect, the Court in *Brose's Estate*, 416 Pa. 386, 206 A.2d 301 (1965), held that language utilized in ten bank accounts in the name of the decedent and his wife clearly created a tenancy by the entireties: Some of the contracts establishing the accounts were well-drawn and entitled "Nicholas or Irma", or "Nicholas and Irma", thus a tenancy by entireties did exist. Others were inartfully drawn and did not reflect the husband and wife relationship, while some listed the names of "Nicholas" and "Irma" but did not connect them with a conjunction or a disjunctive; others denominated the relationship as a "joint tenancy", and yet another merely read: "Payable to either or to the survivor".

Lastly, most of the contracts recited: "All deposits made therein shall be owned by us as tenants by the entireties with the right of survivorship". Several were opened as: "A joint account of husband and wife, and were made payable to either of us or the survivor."

Nonetheless, despite the actual and technical differences in the various deposits, each of the accounts was held by the Court to have "created ... a tenancy by the entireties." In doing so, the Court elaborated:

> A deposit in a bank account or in a checking account or in a savings account,[6] which is opened or registered in the name of a husband and wife, or of a husband or wife, *or of two persons who are husband and wife although not so denominated, creates a tenancy by the entireties, irrespective of whether the money deposited is* payable to husband *and* wife or to husband *or* wife, or is *denominated a joint account or a joint tenancy.*

---

[6] or real estate which is recorded, or *a bond or stock certificate which is registered in the name of two persons who are husband and wife.*

416 Pa. at 389 & n. 6, 206 A.2d at 304 & n. 6 (Emphasis added in part). Accord *Cohen v. Goldberg*, 431 Pa. 192, 244 A.2d 763, 765 (1968).

█ The decisions are unequivocal that the legal unity of time, title, interest, possession and marriage create a tenancy by the entireties, whereas the presence of time, title, interest

and possession at the moment ownership of property is created establish a joint tenancy, *with a right of survivorship where so indicated.* Id.

■   When we align the facts at bar with the applicable law, we find that Mr. Olson opened accounts with Paine Webber and Merrill Lynch under the legend: "Robert P. Olson & Elizabeth Q. Olson, J.T.W.R.O.S." At the moment Olson opened the accounts, *he was married* to the individual named as a co-owner of the funds and this coalesced with the legal unities to establish a tenancy by the entireties. Cf. *In re Holmes' Estate,* supra, 414 Pa. at 403, 200 A.2d at 745 ("It is their [husband and wife] actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entireties."); *In re Gallagher's Estate,* supra, 352 Pa. at 477, 43 A.2d at 133 ("An estate by the entirety is a form of co-ownership in real and personal property held by a husband and wife with right of survivorship."); *Frederick v. Southwick,* 165 Pa.Super. 78, 67 A.2d 802, 805 (1949) ("A tenancy by the entirety * * * is essentially a form of joint tenancy, modified by the common-law theory that husband and wife are one person.").

■   Looking at the trial court's conclusion that Mr. Olson created other than a tenancy by entireties in accounts with Paine Webber and Merrill Lynch, we learn the basis for its determination to consist of the following:

> The instant accounts here do not enjoy the presumption of an entireties estate because the initials JTWROS indicate an intention not to hold the accounts in the entireties. *Without the words husband and wife on the account, no presumption of entireties can exist.*
>
> *         *         *         *         *         *
>
> *At the very least, Mr. Olson, who opened the accounts, should have requested that they be marked as "husband and wife" to indicate some presumption that an entireties estate was intended.*

Trial Court Opinion at 3 (Emphasis added). This statement of the law is erroneous and at odds with a legion of cases which

hold to the contrary. See, e.g., *In re Holmes' Estate*, supra; *In re Cribbs*, supra; *Brenner*, supra; *Heatter v. Lucas*, 367 Pa. 296, 80 A.2d 749, 751 (1951); *Berkowitz' Estate*, supra; *Geist*, supra.

Thus, inasmuch as the trial court's conclusion of law, which is merely an inference drawn from the facts (or, in this case, the absence thereof), we need not give credence to such a conclusion where it is not supported by adequate evidence. Compare *Ungate v. Passalacqua*, 418 Pa.Super. 12, 613 A.2d 6 (1992); *Estate of Matson*, 374 Pa.Super. 61, 542 A.2d 147 (1988), and contrast *Pregrad v. Pregrad*, 367 Pa. 177, 80 A.2d 58, 59 (1951).

▮ Next, we need to decide whether the presumption that an estate by entireties was created by Mr. Olson has been rebutted by "clear and convincing" evidence. *In re Holmes' Estate*, supra. We think not.

▮ The strongest evidence recited by both the trial court and the appellee to evidence Olson's "intention"[3] to create ownership other than as tenants by the entireties is the acronym "JTWROS"[4] succeeding his name and that of his

3. Intention is the cardinal and controlling element in determining if a husband and wife shall take ownership of property by the entireties, and if such (i.e., by entireties) sufficiently appears, it will be given effect. See *Heatter v. Lucas*, 367 Pa. 296, 80 A.2d 749, 752 (1951). We look to such elemental aspect since "[t]here is presently no legal interdiction which restrains the creation of an estate in a husband and wife other than that of tenants by the entireties." *Brenner v. Sukenik*, 410 Pa. 324, 189 A.2d 246, 249 (1963).

   However, in creating an estate other than by entireties, the evidence necessary in doing so must overcome the presumption of entireties by clear and convincing evidence. *In re Holmes' Estate*, 414 Pa. 403, 200 A.2d 745, 747 (1964).

4. The difference in title-ownership affects whether the property can be reached by the creditors of Mr. Olson, which would not occur in an entireties situation, but would avail creditors attachment and execution rights if the property were owned as joint tenants with rights of survivorship, and then only to the extent of the debtor's ownership interest and not the entire estate. See *American Oil Co. v. Falconer*, 136 Pa.Super. 598, 8 A.2d 418, 421 (1939). If such is the "intent" of the creator of an account, i.e., to create a joint tenancy or tenants in common, he/she must manifest their purpose in clear, precise and

wife on the accounts opened with Paine Webber and Merrill Lynch.

We find such proof neutralized by the language recited in *Holmes' Estate,* supra (that the marital status and not the terms appearing in or omitted from the instrument-creating document is determinative of whether a tenancy by entireties exists) and *Brose's Estate,* supra (property registered in the name of two persons who are husband and wife creates a tenancy by the entireties "irrespective" of whether it is "denominated a joint account or a joint tenancy"), the language of the latter being cited with approval in the 1968 decision of our Supreme Court in *Cohen,* supra.

As an aside, we would observe that Mr. Olson sets forth in his Petition For Consideration of his Petition To Dissolve Attachment And Request For Stay Of Proceedings that his "intention" at all times was to create an estate whereby his wife would "own the accounts ... jointly [with him] as a husband and wife ... as he held all of his joint property with his wife, namely in all respects with his wife, as husband and wife, entitled to all the benefits thereof under Pennsylvania law." RR. 87a–88a. He also alleged that this "intention" was communicated to the representatives of Rorer and Merrill Lynch when the accounts were opened, with the result that accounts in his name and that of his wife with the "JTWROS" appendaged thereto were established. Id.

We conclude that there was sufficient evidence from which the court below could have determined that the "intention" of Mr. Olson was to create a tenancy by the entireties, and, it sufficiently appearing to be Mr. Olson's objective to do so, it should have been given effect. *Heatter v. Lucas,* 367 Pa. 296, 80 A.2d 749, 752 (1951). No clear and convincing evidence was presented to rebut it. *In re Holmes' Estate,* supra.

█ As the accounts, from their inception, were jointly established by the husband for himself and his wife, the creditor/Constitution Bank of the guarantor/husband has no

unequivocal terms to obviate the presumption of entireties and any doubt to the contrary.

present interest in such estates by the entireties. Should the wife survive the husband she will become the absolute owner of the accounts, in which the creditor will have no interest. On the other hand, if the husband survives the wife, he will become the owner of the property by survivorship, and it will be subject to all of his debts as any other property or estate of his would be. *United States National Bank of Johnstown v. Penrod,* 354 Pa. 170, 47 A.2d 249 (1946); see generally *In re Estate of Maljovec,* 412 Pa.Super. 80, 602 A.2d 1317, 1319–21 (1991). To the extent the trial court's order permits Constitution Bank to attach and execute against accounts held by Mr. and Mrs. Olson as "JTWROS", the order is reversed; those accounts in the name of Mr. Olson only are subject to attachment and execution to satisfy his guarantor status with Constitution Bank.

Order entered against Robert P. Olson (at No. 4437, May Term, 1991), as herein specified, is reversed; jurisdiction is not retained.[5]

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting.

I respectfully dissent from the majority's decision which, in my opinion, adheres far too rigidly to the elements of tenancy by the entireties without considering the inequitable results in this case. Equity requires us to consider not only the rights and interests of Robert and Elizabeth Olson, but the rights and interests of Constitution Bank as well.

Tenancy by the entireties is a "unique form of co-ownership grounded in the common law concept that husband and wife were but one legal entity." *Clingerman v. Sadowski,* 513 Pa. 179, 519 A.2d 378 (1986). Essentially, a tenancy by the entireties is based on the uniqueness and unity of the marital relationship. *Id.* In this type of ownership, the husband and wife individually own the entire or whole property, and not one-half or a divisible portion. *Id.* Given such unity, neither

5. Given our disposition in favor of Robert P. Olson, we need not respond to his wife's (Elizabeth Q. Olson's) challenge to the denial of her Petition to Intervene. The matter is rendered moot.

spouse may deprive the other spouse of the use and/or enjoyment of the entireties property; and neither spouse may sever or encumber the property without the consent of the other spouse. *Schweitzer v. Evans,* 360 Pa. 552, 63 A.2d 39 (1949). Similarly, property that is conveyed to or titled as "husband and wife" is considered entireties property, and is not subject to attachment by one of the spouse's creditors. *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164 (1966); *see also Patwardhan v. Brabant,* 294 Pa.Super. 129, 439 A.2d 784 (1982).

However, the enactment of the Married Women's Property Acts [1] questioned the continued need for tenancy by the entireties. *Wallaesa v. Wallaesa,* 174 Pa.Super. 192, 100 A.2d 149 (1953). Pursuant to these Acts, women no longer require legal protection because they have achieved the same property rights as their husbands. Pennsylvania, however, chooses to retain the common law concept of tenancy by the entireties, which views a husband and wife as a single entity. *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975); *Madden v. Gosztonyi,* 331 Pa. 476, 200 A. 624 (1938). Therefore, in determining whether a tenancy by the entireties has been created, the intention of the husband and wife is controlling and will be given effect. *Brown v. Brown,* 330 Pa.Super. 324, 479 A.2d 573 (1984).

In the instant case, I find the majority's strict adherence to the traditional attributes of tenancy by the entireties unwarranted. The finding of a tenancy by the entireties, under these circumstances, only serves to enable a party to avoid payment of a debt.

Moreover, the intent of the Olsons to *not* hold the accounts as entireties property is clear from the language on the accounts naming "Robert P. Olson and Elizabeth Q. Olson

---

1. Act of May 23, 1887, P.L. 170, and Act of June 8, 1893, P.L. 344 Sec. 1 (48 P.S. § 31). The Act of 1893 permitted married women to lease, sell, and own real estate, but required the consent and participation of their husbands in such transactions. The Act of 1957, however, equalized a married woman's rights with the rights of a married man. A woman's property rights were further enhanced in 1971 with the Equal Rights Amendment to the Pennsylvania Constitution. *See* Pa. Const., art. I, § 28.

JTWROS." In addition, the record indicates that Robert Olson had a thorough understanding of the effects of titling property as husband and wife. The fact that during his twenty years of marriage he has always knowingly held property jointly with his wife as tenants by the entireties, is indication that that Robert Olson understood the distinction between the various tenancies available to property owners.

The application of tenancy by the entireties to these accounts allows one spouse, or both spouses, individually, to protect their jointly held property. Such an outcome prevents the bank from collecting on a debt to which it is legally entitled. Tenancy by the entireties was never intended to work such an inequity. I, therefore, dissent from the majority's analysis and result.