J-A27014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| KEITH WILLIAMS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAWN WILLIAMS | |
| Appellant | No. 430 EDA 2016 |

Appeal from the Decree Entered December 29, 2015
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 409-2013-DR

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED FEBRUARY 13, 2017**

Appellant, Dawn Williams ("Wife"), appeals from the decree that divorced her from Keith Williams ("Husband"). Wife contends that the trial court erred in applying the parties' ante nuptial agreement. After careful review, we affirm.

A detailed factual history is unnecessary given the issues raised by Wife. By way of summary, Wife purchased the marital home from her father in May 2008, and the parties began living there immediately, even though they did not marry until August 6, 2011. The property was titled in Wife's name alone, and Wife is identified as the sole borrower on the mortgage. It is undisputed that Wife intended for the property to remain solely hers, as

_____

[*] Former Justice specially assigned to the Superior Court.

she desired for it to remain with her family. To further this goal, the parties entered into an ante nuptial agreement in July 2011. Neither party challenges the validity or enforceability of this agreement.

Under the agreement, the parties agreed that all property at the time of marriage would remain the personal property of the respective parties. Absent any property acquired jointly post-marriage, there would be no marital property to distribute upon divorce. The sole exception concerned the marital home.

With respect to the marital home, the agreement provides that the home will remain Wife's property, but that Husband's financial contributions to the parties' equity in the home would remain his own personalty. To effectuate this arrangement, the agreement sets forth a formula for determining Husband's share of the equity in the home. Under the formula, Husband's down payment and subsequent contributions to the mortgage payments would be divided by the total down payment and mortgage payments made by the parties to determine a percentage share. This percentage would then be multiplied by the appraised market value of the home at the time of divorce or separation.

The parties separated in June 2013, and Husband filed for divorce in July 2013. The parties disagreed on the amount due to Husband under the agreement, and proceeded to litigate their dispute before a divorce master. After two hearings, the master entered a recommendation that Wife pay

$98,957.17 to Husband pursuant to the agreement. Wife filed exceptions, which the trial court denied. The court then entered an order and decree in divorce. This timely appeal followed.

On appeal, Wife purports to raise three issues with the trial court's order. However, upon review, all of Wife's issues are challenges to the trial court's application of the agreement's formula for calculating the value of Husband's equity in the marital home. **See** Appellant's Brief, at 20 ("There appears to be a very precise meeting of the minds of the parties regarding the ESSA mortgage. Both are responsible for one-half of it."); 23-24 ("The Master … errs in ignoring the law and finding entirely in favor of Husband, giving Husband credit for non-marital mortgage principal reduction."); 25 ("Wife … maintains that the entire agreement calls for Husband to be responsible for ONE-HALF of the ESSA mortgage.").[1] Thus, all of Wife's issues raise issues of law concerning the interpretation of the ante nuptial agreement.

We construe ante nuptial agreements in accordance with standard contract principles, with exceptions not relevant here. **See Estate of Kendall**, 982 A.2d 525, 534 (Pa. Super. 2009). Thus, the paramount

---

[1] Thus, while portions of Wife's third argument reference principles of equitable distribution, she concedes that the agreement is controlling on this issue. Even if she had not conceded this point, we would have concluded that the agreement explicitly precluded application of equitable considerations in distributing the property.

concern is to give effect to the intent of parties. *See Raiken v. Mellon*, 582 A.2d 11, 13 (Pa. Super. 1990). Consequently, terms in the agreement that are clear and unambiguous are to be given effect without reference to matters outside the contract. *See id*. "[A]bsent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements." *Lugg v. Lugg*, 64 A.3d 1109, 1112 (Pa.Super.2013) (citations omitted).

The ante nuptial agreement in this matter provides that

Each of the parties hereby agree that all of the property of any nature real, personal or mixed, wherever situate, belonging to either party hereto prior to the contemplated marriage, as set forth on the attached Exhibits A and B, or any property into which the same may be exchanged, converted, invested or reinvested from time to time, and interest, income, dividends, rents and profits that may be received from or with respect to said property or that may in time accrue, or result in any manner from increase in value thereon, including any increase in value due to the labor or efforts of either party shall be and remain forever his and her separate property respectively and each party shall, during his or her lifetime, keep and retain sole ownership, management, control, enjoyment and power of disposal of such property, free and clear of any claim by the other at any time. The parties further agree that none of such property shall be deemed to be marital property as that term is defined in the Pennsylvania Domestic Relations Act or in the law of any other jurisdiction, nor shall it be deemed community property as that term is defined in any community property jurisdiction.

Agreement, 7/21/11, ¶ 6. The marital home is listed in Exhibit A as Wife's property, and is not listed in Exhibit B as Husband's property. In contrast, both parties list one-half of the mortgage for the marital residence as a liability in their respective exhibits.

Regarding the payment due to Husband upon dissolution of the marriage for his investment in the marital home, the agreement provides:

> Keith Williams will be entitled to be paid a sum of money equal to a percentage of the then fair market value calculated as follows:
>
> Keith's Portion
> ($42,900 + (Principal Reductions from Mortgage Contributions) = Keith's portion;
>
> Dawn's Portion
> ($389,296) + (Principal Reduction from Mortgage Contributions) = Dawn's portion
>
> Payment to Keith = Keith's portion ÷ (Dawn's portion + Keith's portion) × the Appraised Market Value.
>
> By way of illustration, assume the Fair Market Value is $500,000 and Keith Williams and Dawn F. Hazlett each contributed $17,100 in Principal Reduction. Keith's percentage would be $60,000 ÷ $466,396 or (12.8646%). Keith Williams would be entitled to a payment of (12.8646 × $500,000) = $64,323.00. Receipt of such payment would constitute a full release of any claim by Keith Williams.

*Id*., at ¶ 12.

Wife first argues that the trial court failed to properly deduct Husband's liability for the mortgage from the calculation. At the conclusion of her first argument, she asserts that the agreement provides that Husband is responsible for one-half of the outstanding balance of the mortgage. **See** Appellant's Brief, at 20. However, in her third argument, Wife concedes that deducting one-half of the mortgage balance from Husband's payment "is something the parties likely did not intend." **Id**., at 27.

It is clear that the explicit calculation contained in paragraph 12 of the agreement does not reference Husband's mortgage obligation at all. Furthermore, it is undisputed that Wife is the only borrower listed on the mortgage, and Husband is not on the deed. The agreement provides in paragraph 6 that the marital residence is not to be considered marital property subject to equitable distribution, but rather is to remain Wife's sole property.

The only evidence supporting Wife's position is Husband's listing of one-half of the mortgage as a liability in his exhibit. However, even Wife does not argue that the parties intended to hold Husband liable for one-half of the mortgage. While exhibit B creates ambiguity in this regard, the ambiguity is easily resolved through reference to common sense and the rest of the agreement.

The parties intended for Husband's financial contributions to the martial home to be treated as an investment. To that end, he was to receive his share of the downpayment, $42,900, plus credit for the amount the mortgage principal was reduced through his contributions. Furthermore, the agreement provides that Husband is entitled to a proportional share of any increase in the value of the marital home during the marriage using the Appraised Market Value term in the formula. Husband does not receive any credit for his mortgage payments to the extent that they were applied to

interest. Nor did he ever explicitly agree to be liable for the mortgage on the marital residence.

In return for this investment, Husband received no ownership rights in the marital residence. Thus, the agreement treats Husband as a passive investor in the marital residence, akin to an investor who purchases a minor position in a publicly traded company. Such an investor owns merely a right to realize any possible gain or loss from his investment.

Wife's proposed calculation has no basis in the agreement. As noted, she concedes that the parties did not intend for Husband to be liable for one-half of the mortgage. Rather, she argues in her third issue that Husband should be liable for a proportion of the mortgage equal to the ratio of Husband's contributions to Wife's contributions, or approximately 13%. However, the agreement does not contain any provision that could arguably support Wife's preferred interpretation.

As such, we agree with the trial court that the only reasonable construction of the agreement does not assign Husband any liability for the remaining balance of the mortgage. Wife's argument to the contrary merits no relief. This disposes of Wife's first and third issues on appeal.

In the alternative, Wife contends that the trial court erred by including pre-marital mortgage payment contributions made by Husband in calculating the payout. However, paragraph 12 provides that Husband "*continues* to provide 50% of the monthly mortgage payments" and that "the investment

of [Husband] will remain as personalty." (emphasis supplied). Furthermore, the explicit formula, as set forth above, contains the term "(Principal Reductions from Mortgage Contributions)" and not "(Principal Reductions from *Marital* Mortgage Contributions)". Finally, Wife does not provide any logical reason why the parties would have intended the pre-marital contributions to be treated differently from the contributions made during marriage. Therefore, we conclude that this argument also merits no relief.

Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017