J-S31012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BARBARA B. VIRANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LESLIE R. VIRANY | |
| Appellant | No. 1785 WDA 2016 |

Appeal from the Decree November 15, 2016
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2013-1828

BEFORE:  PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                          **FILED JUNE 27, 2017**

Before they were married, Appellant Leslie R. Virany ("Husband") and Appellee Barbara B. Virany ("Wife") executed a pre-nuptial agreement ("the Agreement") with the intent to preserve their existing property as nonmarital. In this appeal, we are asked to review the trial court's decision to ratify the equitable distribution[1] master's application of the Agreement to assets owned by the parties. After careful review, we affirm.

Neither Husband nor Wife argues that the Agreement is invalid. The only issues on appeal involve reviewing the master's application of the

_____

[1] As discussed below, there was no equitable distribution in this case. However, the matter was heard by the equitable distribution master to determine what property was subject to equal distribution under the Agreement.

Agreement to specific assets. Furthermore, neither party contests the conclusion that under the Agreement, marital property is to be split equally, not equitably.

As we are not presented with an equitable distribution order, we need not address equitable principles. However, the hearings underlying this appeal were before an equitable distribution master. In such instances,

> it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Childress v. Bogosian***, 12 A.3d 448, 455 (Pa. Super. 2011) (citations and quotation marks omitted).

We construe prenuptial agreements in accordance with standard contract principles, with exceptions not relevant here. ***See Estate of Kendall***, 982 A.2d 525, 534 (Pa. Super. 2009). Thus, the paramount concern is to give effect to the intent of parties. ***See Raiken v. Mellon***, 582 A.2d 11, 13 (Pa. Super. 1990). Consequently, terms in the agreement that are clear and unambiguous are to be given effect without reference to matters outside the contract. ***See id***. "[A]bsent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements." ***Lugg v. Lugg***, 64 A.3d 1109, 1112 (Pa.Super.2013) (citations omitted).

The Agreement in this matter provides that the parties waived any claim they might have in each other's "Separate Property." Agreement, 7/15/97, ¶ 2.A. Thus, anything deemed to be "Separate Property" is nonmarital property and not subject to equitable distribution. "Separate Property" is defined as

> all of such party's right, title and interest, legal or beneficial, in and to any and all property and interests in property, real personal or mixed, wherever situate and regardless of how titled, in which each of the parties owned or had a beneficial or legal interest at the time of their marriage as well as any property, real, personal or mixed obtained at any time by inheritance, devise, bequest, or assets acquired by gift by either party to this Prenuptial Agreement at any time from a third person.

*Id*., at ¶ 2.B. Furthermore, "Separate Property" includes "all increase or appreciation in value of all property defined in this sub-paragraph, whether … due in whole or part to … the services, skills or efforts of either of the parties or as the result of additional capital contributions." *Id*., ¶ 2.C. The proceeds of any sale or transfer of assets from Separate Property is also included as "Separate Property." *See id*.

Husband first claims[2] that the master erred in concluding that five accounts held by Wife are Separate Property. Husband asserts that Wife

---

[2] Husband concedes that while he identifies six separate challenges to the trial court's decree, his argument can be condensed into two broad issues. *See* Appellant's Brief, at 10.  Our review of the brief reveals that Husband's appellate counsel has accurately and succinctly identified his two broad arguments. We further conclude that none of the separate issues raised by Husband are meaningfully distinguishable from these broad issues. We
*(Footnote Continued Next Page)*

opened these accounts during the marriage. Therefore, he contends that the accounts are subject to equal distribution pursuant to Paragraph 3 of the Agreement: "Except as set forth in this Prenuptial Agreement, any property acquired by either [Wife] or [Husband] after the date of their marriage shall be considered marital property as defined in the Pennsylvania Divorce Code, as amended."

Essentially, Husband argues that Wife's earned income during the marriage was marital property under Paragraph 3 of the Agreement. As a result, he contends, these five accounts, funded by Wife's income during the marriage, were marital property. While there is logic behind Husband's argument, the process by which Wife received her income transmuted it into Separate Property under Paragraph 2.C.

Wife testified that her earned income was directly deposited into her Community Bank checking account. *See* N.T., Hearing, 3/26/16, at 58-59; N.T., Hearing, 12/21/15, at 76. She further testified that she had owned this checking account prior to her marriage to Husband. *See id*. Furthermore, this account is listed as Wife's Separate Property in Exhibit A to the Agreement.

The master found that "[d]uring the marriage Wife deposited her income into this account[.]" Master's Report and Reccomendation, 6/16/16,

_____
*(Footnote Continued)*

therefore will address the broad arguments without focusing on the specifics of each individual issue identified by Husband.

at ¶ 28. Husband does not point to any evidence to demonstrate that Wife's testimony on this issue was false. Nor does he make any serious argument on appeal that this testimony was false. Finally, he makes no argument that some portion of Wife's earned income did not travel through the Community Bank checking account.

Given our standard of review, we conclude that this finding is supported by the record and cannot be disturbed. As a result, we conclude that Husband's claims that the master and the trial court erred in finding that the five identified accounts are marital property merit no relief.

Husband also argues that the business goodwill earned by Wife during the marriage is a marital asset subject to equal distribution. Prior to marriage, Wife was an investment advisor working in her mother's group for Legg Mason. *See* N.T., Hearing, 9/21/15, at 13. This group was purchased by Smith Barney, and Wife continued in the same role after the purchase. *See id*. Smith Barney was subsequently purchased by Morgan Stanley. *See id*. Wife's role remained the same under Morgan Stanley until her mother retired, at which time she became the head of the group. *See id*., at 12-13, 84.

Wife also testified that she has no right to transfer her book of clients to a third party; Morgan Stanley, as her employer, retains the right to assign advisors to its clients. *See* N.T., Hearing, 3/28/16, at 53-54. The master found that

> Wife's interest, assuming there is an interest, in [her group at Morgan Stanley,] is not subject to equal distribution under the Prenuptial Agreement. Wife's employment now is the same as when the parties married; the increase, if any, in the value of the book of business would be her separate property; there exists no separate business entity; and neither party produced any evidence as to the value of Wife's book of clients either at the time of marriage or at present. Consequently, [there] is no value for equal distribution in Wife's book of business.

Master's Report and Recommendations, 6/16/16, at ¶ 24. The master's findings are supported by the record and we will not disturb them.

Based upon these facts, we also agree with the trial court that the master's conclusion that any intangible interest Wife has in the business of her group at Morgan Stanley is Separate Property is reasonable. While the name of the business has changed over the years due to mergers and acquisitions, Wife continued working for her mother until her mother retired. Wife's role as an investment advisor remained the same as it was prior to the marriage. Thus, any intangible property interest was Separate Property under Paragraph 2.B. of the Agreement. Furthermore, any increase in the value of that intangible property interest was due, in whole or in part, to the services, skills, efforts, or additional capital contributions of Wife. Such increase in value would therefore be Separate Property pursuant to Paragraph 2.C. of the Agreement.

As neither of Husband's broad arguments on appeal merit relief, we affirm the decree in divorce.

Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/27/2017