## Commonwealth *v.* DiCio, Appellant.

Argued November 9, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Robert L. Zeman,* with him *Adolph L. Zeman,* and *Zeman & Zeman,* for appellant.

*Jack H. France,* Assistant District Attorney, with him *Jess D. Costa,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., March 23, 1971:

Appellant was indicted for and convicted of fraudulent conversion. The charge arose out of the following factual situation: A friend of appellant died possessing an automobile. The administrator of the friend's es-

tate asked appellant, a used car dealer, to sell the car. Eventually, appellant was given possession of the car and in fact sold it. Apparently relying on a belief that the decedent owed him a substantial sum of money, appellant retained the proceeds from the sale and did not turn them over to the estate.

Appellant attempted to testify that he had agreed to buy a parcel of land from decedent and had paid him $1,700 for that purpose. He indicated that decedent had not been able to deliver good title, and thus appellant felt he was owed that amount. The Commonwealth successfully objected to testimony concerning the sale of land on the basis that it was violative of the "dead man's rule".[1]

The jury found appellant guilty of fraudulent conversion. From judgment of sentence, this appeal followed.

At trial the Commonwealth argued that the dead-man's rule barred appellant from testifying concerning a sale of land by decedent. However, by its own terms the statute clearly does not apply to the instant case. "For a person to be rendered an incompetent witness by the rule pertaining to deceased parties, he must have an interest adverse to that of the decedent. As stated in Hendrickson Estate, 388 Pa. 39, [45,] 130 A. 2d 143, 146 (1957) : 'Under this exception three conditions must

---

[1] "Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy, . . ." with certain exceptions not relevant here. Act of May 23, 1887, P. L. 158, §5, cl. (e), 28 P.S. §322.

exist before any such witness is disqualified: (1) the deceased must have had an actual right or interest in the matter at issue, i.e., an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.' " *Pavlinko Estate,* 399 Pa. 536, 544, 160 A. 2d 554, 558 (1960). Clearly the Commonwealth, as prosecutor and the "plaintiff" party of record, has not been recipient of any right or interest of the deceased.

In addition, appellant's "adverse interest" in the case was not of the type which would make him incompetent to testify. "The test for determining a witness' interest has long been recognized: 'The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action.' " *Commonwealth Trust Company v. Szabo,* 391 Pa. 272, 281, 138 A. 2d 85, 89 (1957) (citations omitted). Appellant's interest in being absolved of guilt in the present criminal proceeding affects his credibility, not his competency.

Moreover, extensive research has not revealed another instance in which the deadman's rule has been applied to a criminal case. The statute was intended to prevent the injustice which might flow from permitting the surviving party to an occurrence to testify favorably to himself and adversely to decedent's financial interests, which decedent's representative would be in no position to refute. See, e.g., *Perlis v. Kuhns,* 202 Pa. Superior Ct. 80, 195 A. 2d 156 (1963). Even in civil cases text writers and commentators have often criticized the rule, which protects dead men's estates from false claims rather than saving living men's estates from loss by lack of proof. 2 Wigmore, Evidence

§578 (3d ed. 1940). Criticism of the rule is even more applicable to criminal cases, where considerations of property should be expected to give way to a concern for the defense of individual liberties. There is no apparent basis for imposing a dead man's rule in a criminal prosecution. *United States v. O'Connor*, 273 F. 2d 358 (2d Cir. 1959).

Here, the lower court correctly charged the jury that the crucial issue was whether appellant in good faith thought or believed he had a right to withhold the proceeds from the sale of the car. Appellant intended to base his defense on his belief that decedent owed him money because of an unconsummated sale of land, and thus he had no obligation to transfer funds to decedent's estate. The court's application of the dead man's rule severely hampered this defense and significantly prejudiced appellant in his attempt to establish his good faith.

While this case had many of the aspects of a civil proceeding for an accounting, it was incorrect to exclude the proffered testimony by analogy to civil cases. A case such as this has no place in a criminal court, and is illustrative of the confusion and injustice which result when the criminal courts are used as a vehicle for redress of civil grievances.

Judgment of sentence is vacated and the case is remanded for a new trial consistent with this opinion.