658 A.2d 358

**Joyce D. OLSON, Executrix of the Estate of David A. Olson, Appellee,**

v.

**NORTH AMERICAN INDUSTRIAL SUPPLY, INC. and Thomas E. Jones, Appellants.**

Superior Court of Pennsylvania.

Argued March 1, 1995.

Filed April 25, 1995.

600

John R. Fernan, Ridgway, for appellants.

Carl A. Belin, Jr., Clearfield, for appellee.

Before TAMILIA, JOHNSON and HUDOCK, JJ.

HUDOCK, Judge:

This is an appeal from the trial court's order denying North American Industrial Supply, Inc. (NAIS) and Thomas E. Jones' (Jones) motion for post-trial relief. We affirm.

The history of this appeal stems from a declaratory judgment action filed by Joyce D. Olson (Olson), as the Executrix of the estate of her husband, David A. Olson (the decedent). In 1972 the decedent and Jones purchased all outstanding shares of the Pennsylvania business corporation NAIS. The decedent and Jones were the sole shareholders, officers and directors of NAIS from 1972 until September 21, 1991, when the decedent died.[1]

In October of 1972, the decedent and Jones executed a stock redemption agreement (the agreement) whereby each party agreed to transfer their NAIS shares back to the corporation upon their death. The agreement provided in pertinent part:

11. That the repurchase by Corporation of any shares which any Shareholder desires to transfer in any way whatsoever be the sole method by which any Shareholder may transfer his interest in Corporation.

12. That upon the death of any Shareholder, such Shareholder's estate shall participate in Corporation only as a

---

1. It appears from the record that an employee of NAIS, Robert Redman, Jr., was given ten percent of the shares of NAIS prior to the decedent's death. This fact has no relevancy to the issues raised in this appeal. See N.T., 5/25/93, at pp. 9–14.

general creditor of Corporation in the amount of the value of such deceased Shareholder's shares in Corporation as determined by the formula hereinafter set forth.

13. That the purchase price of any shares repurchased by Corporation shall be determined by the following formula:

$$\frac{\text{SHARES TO BE TRANSFERRED}}{\text{TOTAL SHARES OF CORPORATION OUTSTANDING}} \times \text{(BOOK VALUE OF CORPORATION AS OF THE CLOSE OF THE LAST DAY OF THE QUARTER PRECEDING THE DATE OF NOTICE OF DESIRE TO TRANSFER OR DATE OF DEATH + [GOODWILL].)}$$

14. That [goodwill] shall be valued at $10,000.00 **until August, 1973.**

15. That the amount to be allocated for [good-will] **be redetermined each and every year** by a majority of the Board of Directors of Corporation at the annual Directors Meeting beginning in the year 1973, A.D., and the amount so established to be in effect up to the next annual Director's meeting.

Shareholder's Redemption Agreement, Paragraphs 11–15 (emphasis added).

Pursuant to the terms of the agreement, Olson tendered 369 shares of common stock and 5 shares of preferred stock to NAIS on July 8, 1992. Olson demanded payment of $253,-100.00, a figure which her accountant calculated in accordance with the terms of paragraph 13 of the agreement. Believing that this number was excessive, NAIS and Jones rejected Olson's demand and tendered a check in the amount of $126,203.45. This figure was comprised of $121,203.45 for the book value of the common shares, $500.00 for the surrender of the preferred stock, and $4,500.00 for the decedent's pro-rata share of the goodwill value of the corporation. Jones contended that he and the decedent had met daily "around the coffee pot" to discuss business matters such as the value of goodwill. He explained that he and the decedent had agreed to maintain the original $10,000.00 value for goodwill at these informal meetings.

Olson rejected Jones' tender arguing that she was entitled to more money since the goodwill value of the corporation had substantially increased since 1973. The parties continued to negotiate the value of the stock but were unable to reach an amicable resolution. Consequently, Olson filed a complaint in equity seeking a declaratory judgment on September 25, 1992. Olson requested the court to determine an appropriate book value and goodwill value for the tendered shares using objective data, or in the alternative, to order rescission of the agreement.

Prior to trial, NAIS and Jones filed a motion in limine seeking a ruling from the court that Jones was permitted to testify at trial despite the provisions of the Dead Man's Act. Jones wanted to testify at trial that he and the decedent had regularly discussed the value of the corporation's goodwill and orally agreed to maintain the $10,000.00 value. Jones argued that Olson waived the application of the Dead Man's Act by requesting financial records of the corporation prior to instituting the equity action. Olson denied that she had waived the Dead Man's Act since she received all documentary evidence prior to the time when she filed her complaint in equity. Furthermore, Olson claimed that she did not resort to any discovery methods found in the rules of civil procedure since NAIS and Jones voluntarily complied with her request to send financial records. On May 18, 1994, the trial court denied NAIS and Jones' motion in limine and ruled that Olson did not waive the Dead Man's Act. Thus, Jones was precluded from testifying at trial that he and the decedent had reached an oral agreement concerning the value of goodwill.

Prior to trial the parties agreed that the court had no authority to apply a substitute valuation for the tendered shares or for corporate goodwill. The sole issue for the court was whether the agreement was enforceable. An evidentiary hearing was held May 25, 1993 to determine this issue. The parties stipulated that no corporate records and minutes existed evidencing that the Board of Directors met annually. At the close of Olson's presentation of testimony, NAIS and Jones filed a demurrer requesting the court to enter a compul-

sory nonsuit. The trial court rejected this motion and entered an adjudication and decree nisi declaring the agreement unenforceable. The court ordered NAIS and Jones to return the 369 shares of stock to the decedent's estate in exchange for the $126,203.45 tendered to Olson.

NAIS and Jones filed a motion for post-trial relief on June 10, 1994. The trial court denied this motion and confirmed the decree nisi. NAIS and Jones then filed this appeal in which they present numerous issues for our review.

NAIS and Jones first argue that the trial court erred when it declared the agreement unenforceable. They argue that the decedent and Jones periodically orally agreed to maintain the value of goodwill at $10,000.00. Alternatively, they argue that if the agreement is unenforceable, the court does not have authority to grant rescission and order the parties to return to the status quo.

Our scope of review in equity matters is narrow. We are limited to determining whether the factual findings of the trial judge are supported by competent evidence, whether an error of law has been committed, or whether there has been a manifest abuse of discretion. *Osborne v. Carmichaels Mining Machine Repair, Inc.*, 427 Pa.Super. 159, 163, 628 A.2d 874, 877 (1993). The factual findings of a trial judge sitting as a Chancellor in Equity are entitled to the weight of a jury verdict and will not be upset by an appellate court if supported by adequate evidence. *Jennison v. Jennison*, 346 Pa.Super. 47, 53, 499 A.2d 302, 305 (1985).

In the adjudication and decree nisi, the trial court concluded that the decedent and Jones, as directors of NAIS, ignored the provision of the agreement which mandated that they redetermine the corporation's goodwill value each year. Consequently, the trial judge concluded:

The agreement specifically provid[ed] in Paragraph 14 that [goodwill] is valued at $10,000 *until August 1973*, said $10,000 has no life or meaning, in and of itself, thereafter, and therefore, no determination of said value ever thereaf-

ter having been made, said agreement on this issue is therefore declared unenforceable.

Adjudication and Decree Nisi, 6/3/94, at p. 5.

After examining the clear and concise language of the agreement, we agree with the trial judge's interpretation. "When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement." *Raiken v. Mellon*, 399 Pa.Super. 192, 196, 582 A.2d 11, 13 (1990). Moreover, "[i]n interpreting the value of shares pursuant to a stock redemption agreement, our only useful authority is the language of the agreement itself." *Osborne*, 427 Pa.Super. 159, 628 A.2d 874, 628 A.2d at 877.

In the instant case, the words of the agreement are clear and subject to one reasonable interpretation. The parties agreed that every year the value of goodwill would be reassessed. The $10,000.00 value only applied until August of 1973. The parties agreed that the court should not employ a substitute method of calculating the goodwill value. Furthermore, neither party offered any competent evidence that would aid the court in determining the goodwill value.[2] Therefore, the only remedy the court could grant was to declare the agreement unenforceable.

This Court granted a similar remedy in *Jennison v. Jennison, supra*, 346 Pa.Super. 47, 499 A.2d 305. In that case the parties entered a buy-sell agreement in which the plaintiff-appellee agreed to sell 300 shares of South Pitt Tool Co., Inc. "for a purchase price to be [later] negotiated and agreed upon by Buyer and Seller." *Jennison*, 50, 499 A.2d at 303. When the parties were unable to agree on a purchase price, the plaintiff brought an action for specific performance. The Chancellor ruled that the buy-sell agreement could not be

---

**2.** NAIS and Jones argue that they should have been permitted to offer Jones' testimony regarding the allegedly oral agreements made "around the coffee pot" between the decedent and Jones where they agreed to maintain the goodwill value at $10,000.00. The trial court ruled in a motion in limine that this testimony was inadmissible by virtue of the Dead Man's Act. We will examine if the trial court's ruling was correct *infra*.

specifically enforced because the court could not supply the missing price term. On appeal, this Court upheld the Chancellor's ruling and declared:

> Appellant presented neither any other evidence from which the court could conclude that the parties had agreed on a price nor any evidence from which the court could supply the missing terms on a "reasonably certain basis," . . . . The contract provided that the parties were to agree on a price; their negotiations broke down without their reaching an agreement. . . . All we have is an "agreement to agree" which is incapable of enforcement. The Chancellor was correct in refusing specific performance.

*Id.* 346 Pa.Super. 54–55, 499 A.2d at 305–06 (citations omitted).

We find that the facts of *Jennison* are analogous to this case and the remedy afforded instructive. Consequently, we find that the trial court was correct in declaring the agreement unenforceable.

■ Next, NAIS and Jones contend that even if the agreement was unenforceable, the trial court granted inappropriate relief. They argue that the court lacked authority to grant rescission of the agreement since Olson was not a party to the agreement. They complain that the court should not have ordered the parties to return the conditional tenders of stock and money. Instead, NAIS and Jones suggest that Olson should keep the $126,203.45 while they keep the 369 shares of redeemed stock.

To understand the relief granted by the trial court, we refer to the adjudication and decree nisi. The court stated:

> That portion of said agreement is therefore rescinded and the estate of David A. Olson is ordered to tender to [NAIS] the $126,203.45 that said corporation paid and the said corporation is ordered to return or reissue the shares delivered to [NAIS] by [Olson.]

Adjudication and Decree Nisi, 6/3/94, at p. 6. The trial court further explained the relief granted in its memorandum opinion denying NAIS and Jones' post-trial motions. The court explained:

> That portion of the contract being unenforceable, and tenders of stock and cash being conditional, it was the intent of the decree nisi adjudication order, although perhaps inadvertently improperly stated, that because the agreement was unenforceable in regard to the portion thereof above stated, the tenders of stock and cash were ordered rescinded.... The agreement is not rescinded but the conditional tenders are.

Trial Court Opinion, 7/29/94, at p. 3.

NAIS and Jones' argument that they are entitled to keep the 369 shares of stock is untenable. The reason why Olson instituted suit was because she was dissatisfied with the conditional tender of $126,203.45. In Olson's complaint in equity she requested two alternative prayers for relief—one was that the court determine an appropriate value for the book value and goodwill value of NAIS shares. If the court could not grant this relief, which the parties ultimately agreed that it could not, Olson requested the court to declare the agreement unenforceable and order the parties to return their conditional tenders. Once the court declared the contract unenforceable, the parties were required to "rescind" or return to the status quo. If NAIS and Jones were entitled to keep the 369 shares while paying Olson only $126,203.45, this would mean the court ruled in their favor and accepted their value for goodwill. Clearly, this is not what the court found. Therefore, we reject NAIS and Jones' argument that rescission was an inappropriate remedy.

In their third issue NAIS and Jones claim that the trial court erred by concluding that the decedent and Jones never met to informally revalue the goodwill of the corporation based on the fact that there were no corporate minutes evidencing these meetings. NAIS and Jones argue that these meetings did transpire despite the lack of formal records. They also claim that Olson had the burden of proving that the directors never met to revalue the corporation's goodwill. NAIS and Jones contend that they should have been permitted to introduce parol evidence to "aid, correct and supplement" the corporate minutes. *Montgomery v. Greene County*

*Clay Products Company,* 205 Pa.Super. 515, 518, 210 A.2d 911, 913 (1965).[3]

NAIS and Jones contend that a closely held corporation is not bound by the same strict formalities as a large corporation and that the actions of the directors of a closely held corporation may be proven by other means other than the corporate minutes. *See Kann v. Keystone Resources, Inc.,* 575 F.Supp. 1084 (W.D.Pa.1983). We agree with this contention but fail to see how they offered "other means" to prove that the board of directors of NAIS met to redetermine the value of goodwill. The trial court did not preclude NAIS and Jones from offering parol evidence to prove that the decedent and Jones, acting as the Board of Directors, met to redetermine the corporation's goodwill value. However, the trial court did rule in a motion in limine that Jones was precluded from testifying as to oral communications he allegedly had with the decedent because it violated the Dead Man's Act. NAIS and Jones claim that this ruling was erroneous. We disagree.

Pennsylvania adopted the Dead Man's Act at 42 Pa.C.S.A. section 5930. This Act provides, in pertinent part:

[I]n any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy,....

42 Pa.C.S.A. § 5930.

The purpose of this Act is " 'to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon favorable to himself and adverse to the decedent, which the latter's repre-

**3.** If no corporate minutes existed, as the parties stipulated, then NAIS and Jones could not aid, correct or supplement minutes which did not exist.

sentative would be in no position to refute.'" *Stathas v. Wade Estate*, 251 Pa.Super. 269, 271, 380 A.2d 482, 483 (1977) (citation omitted).

Before a witness is declared incompetent to testify under the Dead Man's Act, three conditions must exist: (1) the deceased must have had an actual right or interest in the matter at issue; (2) the interest of the witness, not simply the testimony, must be adverse to that of the decedent; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest. *Commonwealth v. DiCio*, 218 Pa.Super. 268, 270, 275 A.2d 868, 870 (1971).

In the present case, these three criteria are clearly met. First, the decedent had a right or interest in the 369 shares of corporate stock which his estate tendered to NAIS and Jones. Second, Jones' interest as the surviving shareholder, officer and director of NAIS was adverse to the decedent's interest. "In order to be adverse the interest must be one from which the witness will either gain or lose as the direct legal operation and effect of the judgment." *In Re Estate of Gelb*, 425 Pa. 117, 119, 228 A.2d 367, 369 (1967). Jones disagreed with Olson that the value of the 369 shares was greater than the amount already tendered. If Jones prevailed at trial and convinced the trial court that the amount tendered to Olson was sufficient, he would clearly stand to gain additional money. Third, the decedent's right to· the purchase price of the 369 shares passed to his estate who was the party of record in this case.

NAIS and Jones argue that Olson waived the Dead Man's Act by requesting financial records of the corporation. While it is true that a party may waive the application of the Dead Man's Act, we do not find that waiver applies to the facts of this case.

The Dead Man's Act exists for the protection of the dead man's estate; however, the representative of the estate may elect to waive the disqualification of the adverse party by taking his deposition or requesting a response to written interrogatories pursuant to the discovery rules found in the

Pennsylvania Rules of Civil Procedure. *See* Pa.R.C.P., Rules 4004, 4005, and 4007.1. *Flagship First National Bank of Miami Beach v. Bloom,* 288 Pa.Super. 347, 353, 431 A.2d 1082, 1085 (1981); *Perlis v. Kuhns,* 202 Pa.Super. 80, 82, 195 A.2d 156, 158 (1963) (if decedent's representative requires the adverse party to submit to a deposition or respond to written interrogatories, this amounts to a waiver of the Dead Man's Act). Furthermore:

> [W]hen a claimant against the estate of a decedent testifies in his own behalf as to facts occurring since the death of the decedent and is cross-examined as to matters occurring during the decedent's lifetime, the disability imposed by the Act is lifted, and the claimant becomes competent to testify to all relevant and material matters.

*Estate of Kofsky,* 487 Pa. 473, 476, 409 A.2d 1358, 1359 (1979).

In the present case, the waiver exception does not apply. Olson did not request Jones' deposition, nor did she request him to respond to any written interrogatories as permitted by Pa.R.C.P. Rule 4005. Furthermore, Olson did not cross-examine Jones as to matters which occurred during the decedent's lifetime. Olson merely requested Jones to send her documentary evidence related to the corporation's finances. Olson requested this information, prior to instituting suit, so that she could comply with the terms of the agreement and determine an appropriate value for the 369 shares owned by the decedent. We find that the trial court properly applied the Dead Man's Act to exclude Jones' testimony regarding the alleged oral communications he had with the decedent.

Last, NAIS and Jones argue that the equitable doctrines of laches and "unclean hands" apply to defeat Olson's claims. Specifically, NAIS and Jones argue:

> If there should have been a meeting in August, 1973, to redetermine goodwill, and there wasn't, Decedent should have compelled a meeting or rescission of the agreement within a reasonable time thereafter. However, Decedent took no action whatsoever during his lifetime and Decedent

died 18 years after the cause of action, if any, arose. Decedent sat on his rights too long, and this being a derivative action, Olson is bound thereby.

NAIS and Jones' Brief, at p. 27.

Laches is an equitable defense which provides that when a complaining party in equity fails to exercise due diligence in prosecuting a claim to the other party's detriment, the complaining party will be precluded from proceeding with his claim. *Snyder v. Queen Cutlery Company*, 357 Pa.Super. 456, 460, 516 A.2d 71, 74 (1986). The party asserting the defense of laches bears the burden of proving that the other party failed to exercise due diligence and caused a delay which resulted in prejudice. *Kehoe v. Gilroy*, 320 Pa.Super. 206, 212, 467 A.2d 1, 4 (1983). "Laches will not be imputed where no injury has resulted to the other party by reason of the delay." *Brodt v. Brown*, 404 Pa. 391, 394, 172 A.2d 152, 154 (1961) (citation omitted). When determining if laches applies, the court will examine the particular facts of each case. *Kehoe*, 320 Pa.Super. 212, 467 A.2d at 4.

We agree with the trial court's determination that NAIS and Jones have failed to prove that laches applies to their case. The agreement executed between the decedent and Jones was not operative until one of the shareholders died. Once a shareholder died, their representative was obligated to adhere to the terms of the agreement and tender their shares back to the corporation. The decedent had no reason to institute suit while he was alive. It was not until his death that the dispute regarding the value of goodwill arose. Therefore, we may not conclude that the decedent or his representative is guilty of failing to exercise due diligence in prosecuting his claim. Furthermore, Jones has not demonstrated how he was prejudiced by the failure of the decedent to institute suit prior to his death.

Likewise, we do not find that the equitable doctrine of "unclean hands" applies to the facts of this case. This broad principal of equity applies "when the court, within its discretion, finds the party seeking affirmative relief is guilty of

fraud, unconscionable conduct or bad faith directly related to the matter at issue which injures the other party and affects the balance of equities between the litigants." *Equibank v. Adle, Inc.,* 407 Pa.Super. 553, 558, 595 A.2d 1284, 1287 (1991).

NAIS and Jones have failed to demonstrate how the decedent was guilty of any wrongdoing or how Olson benefitted from any willful misconduct on the part of the decedent. The fact that the decedent and Jones failed to conduct annual Board of Director's meetings to redetermine the goodwill value of the corporation does not imply that the decedent is guilty of misconduct such that his estate should forfeit the right to an appropriate value for the 369 shares of stock redeemed by NAIS.

Order affirmed.