J-A08010-16

2016 PA Super 159

| TELWELL INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| GRANDBRIDGE REAL ESTATE CAPITAL LLC, | |
| Appellee | No. 1713 EDA 2015 |

Appeal from the Order Entered April 30, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):
August Term 2011 No. 02204
October Term 2013 No. 02327

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

OPINION BY BOWES, J.:                    **FILED JULY 21, 2016**

Telwell Inc. ("Telwell") appeals from the trial court's grant of summary judgment in favor of Grandbridge Real Estate Capital LLC ("Grandbridge"), on its contract claim, which was premised upon the court's finding that there was no evidence of a contractual relationship between the parties.  In addition, Telwell challenges the court's earlier grant of a demurrer as to its tort claims against Grandbridge based upon the gist of the action doctrine. After thorough review, we affirm in part and reverse in part.

Telwell commenced this action in contract and tort against the Public School Employees' Retirement System ("PSERS"), and Grandbridge, alleging that, together, they overcharged it interest on a $2.6 million ten-year

* Retired Senior Judge assigned to the Superior Court.

balloon mortgage note ("Note") executed on March 3, 2003. The loan was obtained to refinance a property Telwell owned in Philadelphia. PSERS and Telwell executed a Permanent Loan Commitment setting forth the terms of the loan and Telwell signed the Note. The Note provided that, after sixty months of interest at 8.5 percent, the interest would be recalculated based on the U.S. Treasury Note Yield Rate at the time.[1]

It is unclear whether, at the time of the mortgage loan, PSERS had already entered a commercial real estate mortgage servicing agreement with Laureate Capital, LLC ("Laureate"), Grandbridge's predecessor, or whether it did so shortly thereafter. Nonetheless, as of November 1, 2007, Grandbridge, the successor-in-interest to Laureate and the agent of PSERS, assumed responsibility for collecting the monthly payments of capital and interest from Telwell and escrowing money for payment of taxes. Grandbridge retained for itself a monthly servicing fee of $279.16, and paid the remainder to PSERS. After sixty months, Grandbridge did not recalculate the interest as provided in the Note. According to Telwell, Grandbridge continued to charge, and Telwell continued to pay, 8.5 percent interest instead of 4.85 percent interest, the recalculated rate.

---

[1] The terms of the Note regarding the interest rate appear to be inconsistent with the terms of the loan commitment document.

Telwell first became aware of this overpayment after it notified Grandbridge on May 26, 2011, that it intended to refinance the property and requested a payoff statement. In the midst of a disagreement over whether a prepayment penalty was due, Telwell realized and communicated to Grandbridge that it had been overcharged interest since March of 2008. Grandbridge did not repay the overage or recalculate the interest, but instead continued to charge Telwell the higher rate of interest.

Telwell refinanced the loan and then commenced this action against PSERS and Grandbridge sounding in both contract and tort. In its amended complaint at count one, Telwell alleged that Grandbridge and PSERS breached the terms of the Note as well as the implied covenant of good faith and fair dealing in charging excessive interest. At count two, Telwell pled that Grandbridge knew that it was overcharging and that it did so intentionally, knowingly, and fraudulently. Additionally, Telwell averred that Grandbridge made fraudulent misrepresentations to induce Telwell to enter the loan relationship, never intending to recalculate the interest after sixty months. At count three, Telwell alleged that Grandbridge negligently misrepresented the terms of repayment. Finally, Telwell alleged in count four that the defendants conspired to breach the contract and fraudulently overcharge Telwell.

Grandbridge and PSERS filed extensive preliminary objections, initially challenging the court's jurisdiction. Specifically, Grandbridge and PSERS

alleged that, under the Commonwealth Procurement Code, 62 Pa.C.S. §1724, the Board of Claims had exclusive jurisdiction to hear all contract claims against Commonwealth agencies. Preliminary Objections of Defendants, 9/6/11, at ¶4. The defendants also demurred to the contract count, maintaining that, since the complaint failed to allege that Grandbridge was a party to the loan contract, the complaint failed to state a claim in contract against that entity. Furthermore, the defendants alleged that the loan commitment, which was executed on December 16, 2012, between Telwell and PSERS, contained the agreement of the parties and it did not provide for adjustment of the interest rate. Telwell neglected to attach a copy of that document to its complaint.

With regard to the tort claims, the defendants averred that fraud was not pled with the particularity required under Pa.R.C.P. 1019(b), in that Telwell failed to plead that defendants' representations were knowingly false or that Grandbridge was involved prior to or during the formation of the loan relationship. PSERS and Grandbridge also asserted that the tort claims were barred by the gist of the action doctrine as the claims arose from the contract and the duties allegedly breached were duties imposed in the contract itself.

Following the filing of preliminary objections, the trial court transferred the contract claims against both defendants to the Board of Claims, agreeing the Board had exclusive jurisdiction over claims arising from Commonwealth

- 4 -

contracts pursuant to 62 Pa.C.S. § 1724.[2]  The court also concluded that the gravamen of the tort claims sounded in contract, and dismissed them based on the gist of the action doctrine.

The Board of Claims subsequently determined that it did not have subject matter jurisdiction over the contract claims against PSERS and Grandbridge.  It further held that there was no exception from sovereign immunity that would permit recovery against PSERS, and dismissed the case in its entirety.  On appeal, the Commonwealth Court affirmed the Board's determination that it lacked subject matter jurisdiction, but concluded that the Board erred in failing to transfer the claims against Grandbridge back to the court of common pleas, and remanded with directions to the Board to

---

[2] Title 62 Pa.C.S. § 1724, Jurisdiction, provides in pertinent part:

(a)  Exclusive jurisdiction. — The board [of Claims] shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

(1)A contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies).

. . .

(3)Unless otherwise provided by law, a contract entered into by a Commonwealth agency involving real property interests in which the Commonwealth agency is the respondent.

62 Pa.C.S. § 1724.

effectuate the transfer. ***Telwell, Inc. v. Public School Employees'
Retirement System and Grandbridge Real Estate Capital LLC***, No.
1734 C.D. 2013 (Pa.Cmwlth. 2014).

Following transfer of the breach of contract claim against Grandbridge
to the court of common pleas, the parties engaged in discovery.
Grandbridge then filed a motion for summary judgment, which the trial court
granted, finding no contractual relationship that would support recovery in
contract. This timely appeal followed in which Telwell challenges both the
earlier dismissal of its tort claims under the gist of the action doctrine and
the grant of summary judgment on its contract claim.[3]

> 1. Should the trial court have granted Grandbridge's Motion
> for Summary Judgment, resulting in the entry of judgment in
> favor of defendant Grandbridge, on the basis that Grandbridge
> was not a party to the underlying agreement and that Telwell
> had not introduced evidence sufficient to sustain a claim for
> unjust enrichment, notwithstanding the fact that Telwell had
> adduced clear evidence that Grandbridge was aware of, and
> concerned about, the fact that it significantly overcharged
> Telwell in breach of obligations set forth in an applicable loan
> agreement?
>
> 2. Should the trial court have dismissed Telwell's claims
> against Grandbridge for fraudulent misrepresentation, negligent
> misrepresentation, and conspiracy pursuant to the "gist-of-the-
> action" doctrine, notwithstanding the fact that the court did not
> determine whether Telwell had any contractual relationship with
> Grandbridge, and, later, inconsistently held that Grandbridge did
> not owe contractual duties to Telwell?

---

[3] We have re-ordered the issues for ease of disposition.

Appellant's brief at 4.

Telwell's overarching premise is that the trial court's order granting summary judgment on the contract claims due to the absence of evidence of a contractual relationship is fundamentally inconsistent with its earlier order dismissing its tort claims against Grandbridge on the basis that the gist-of-the-action was in contract. Telwell contends that a contractual relationship with Grandbridge was a prerequisite to the applicability of the gist-of-the-action doctrine, and that the trial court's dismissal of its tort claims before ascertaining whether there was a contractual relationship was premature and improper.

Grandbridge asserts Telwell's position constitutes a false dichotomy. According to Grandbridge, Telwell merely recast an ordinary breach of contract claim as a tort claim in which the duty breached was the failure to reduce the mortgage interest rate per the agreement. Since there was no contractual relationship between Grandbridge and Telwell, Telwell could not prevail on a breach of contract claim and summary judgment was properly entered.

As our Supreme Court reiterated in *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 10 (Pa. 2015) (citing *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1118 (Pa. 2000)), an appellate court's scope of review of an order granting summary judgment is plenary. Our standard of review is that "the trial court's order will be reversed only where it is established that the court

committed an error of law or clearly abused its discretion." **Id**.

Furthermore,

> [s]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.

**Gilbert**, **supra** at 10.

The trial court granted summary judgment on the breach of contract claim against Grandbridge because Telwell produced no evidence that Grandbridge was a party to the loan commitment or Note, or that Grandbridge purchased the Note, or that the Note was subsequently assigned by PSERS to Grandbridge. The court further concluded that contractual liability could not be sustained on an unjust enrichment theory because the benefit of overpayment was conferred upon PSERS, as Grandbridge's service fee remained the same regardless of the amount collected.

Telwell alleges that summary judgment was improper for three reasons. First, it contends that the court's ruling was inconsistent with its earlier ruling that the gist of the action was in contract. Secondly, Telwell argues that Grandbridge received a benefit from overcharging, if only briefly. Finally, Telwell maintains that Grandbridge, as PSERS's agent, undertook

responsibility for compliance with the terms of the Note, and thus was liable for any breach of its terms. In support of that position, it relies upon ***Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC***, 40 A.3d 145, 150 (Pa.Super. 2012), where an agent who made repeated assurances and guarantees about the quality of the construction work was held to have voluntarily assumed personal responsibility on the principal's contract with the homeowner. Telwell contends that, at a minimum, there were genuine issues of material fact as to whether Grandbridge personally undertook responsibility for compliance with the Note, and exposed itself to personal liability.

Grandbridge counters first that Telwell failed to allege the existence of a contractual relationship with Grandbridge. Telwell merely pled that it believed that at some point, Grandbridge may have purchased the Note from PSERS. Amended Complaint, 9/13/11, at ¶8. Furthermore, Grandbridge asserts that Telwell bore the burden of proving the breach of contract, and that to avoid entry of summary judgment, it could not simply rely upon its pleadings. ***See*** Pa.R.C.P. 1035.2(2) (providing for summary judgment if "an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense"). It alleges that Telwell offered no proof of a contractual relationship with Grandbridge. In contrast, Grandbridge denied that it purchased the Note from PSERS, denied the existence of a contractual relationship with Telwell, and supplied

affidavits from its employees to the effect that there was no assignment of the Note to Grandbridge. Additionally, Grandbridge provided a copy of the mortgage satisfaction piece that was filed following the payoff that indicated that the mortgage lender was PSERS.

Grandbridge also challenges Telwell's ability to recover on an unjust enrichment theory, pointing out that Telwell did not plead that claim in its amended complaint. Furthermore, if Telwell had been permitted to amend after April 2012 to assert such a claim, Grandbridge asserts the claim would be time-barred as it arose in March 2008. Moreover, Grandbridge maintains that Telwell did not introduce sufficient evidence that it was unjustly enriched as it received the same fixed monthly fee for servicing the loan and transferred the remaining sums to PSERS. Finally, Grandbridge contends that Telwell is precluded from recovery on such a theory because it has unclean hands: although Telwell knew it was being overcharged, it took no action.

Telwell counters that the grant of summary judgment based on affidavits proffered by Grandbridge employees violates the *Nanty-Glo* rule.[4]

---

[4] In *Nanty-Glo v. American Surety Co.*, 163 A. 523, 524 (Pa. 1932), the Supreme Court reversed a directed verdict, recognizing that "[h]owever clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict *(Footnote Continued Next Page)*

With regard to the unjust enrichment claim, Telwell argues that the trial court would not have directed the parties to address unjust enrichment unless the pleadings, liberally construed, fairly presented such a claim. Furthermore, Telwell relies upon the persuasive value of ***Ruddy v. Mt. Penn Borough Mun. Auth.***, 2014 WL 1852002, at *4 (Pa.Cmwlth. 2014) (unpublished memorandum)[5] for the proposition that recovery on an unjust enrichment theory does not require that a defendant retain the benefit for any specific length of time and that a party can be unjustly enriched even if it passed along part of the benefit to another. Therein, a public utility was deemed enriched due to a customer's overpayment, even though it effectively passed on the overpayment to ratepayers, because it benefitted from the goodwill that flowed from not having to raise its rates. The critical inquiry, according to Telwell, was whether one benefitted from what it wrongfully obtained. Appellant's reply brief at 17 (citing ***Torchia v. Torchia***, 499 A.2d 581 (Pa.Super. 1985) (unjust to allow second wife to

*(Footnote Continued)* ─────────────

contrary to the weight of the evidence." ***Nanty-Glo*** is cited for the proposition that, when courts are determining whether there is a genuine issue of material fact that would warrant submission of the issue to the jury, the court may not summarily enter a judgment where the evidence consists exclusively of oral testimony. ***See Stimmler v. Chestnut Hill Hosp***., 981 A.2d 145, 154 (Pa. 2009).

[5] "An unreported panel opinion of the Commonwealth Court issued after January 15, 2008, shall be cited only for its persuasive value, not as binding precedent." ***See*** Commonwealth Court's Internal Operating Procedures, 210 Pa.Code §69.414.

retain the proceeds of her deceased husband's life insurance policies where husband promised for consideration to maintain the policies for the benefit of his children, but subsequently changed the beneficiary designation to second wife)). Moreover, Telwell rejects Grandbridge's assertion of its unclean hands for a mere failure to act, maintaining that the doctrine would only apply where the party seeking relief commits fraud, bad faith, or unconscionable conduct. Appellant's brief at 18 (citing *Olson v. N. Am. Indus. Supply, Inc.*, 658 A.2d 358 (Pa.Super. 1995)). In short, Telwell contends that genuine issues of material fact surrounding the unjust enrichment claim preclude the entry of summary judgment.

As this Court held in *Lackner v. Glosser*, 892 A.2d 21, 24 (Pa.Super. 2006), in order "[t]o maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." We agree with the trial court that, as to its breach of contract claim, Telwell had the burden of proving a contractual relationship with Grandbridge. It simply proffered no evidence of such a relationship while Grandbridge supplied evidence refuting it.

At the time the loan agreement was executed, Telwell dealt exclusively with PSERS through its agent, BB&T. The record contains no evidence that either Grandbridge or its predecessor, Laureate, was a party to the contract between Telwell and PSERS. Furthermore, there was no proof that the Note

subsequently was assigned to Grandbridge. Moreover, the ***Nanty-Glo*** rule is not implicated herein because the affidavits supplied by Grandbridge employees were not the sole evidence relied upon by Grandbridge in support of its motion. The Note, the loan commitment document, the payoff letter, and the mortgage satisfaction piece refuted Telwell's allegation that there was a contractual relationship between Grandbridge and Telwell.

Nor did Telwell offer any evidence that would suggest that Grandbridge, as PSERS's agent, voluntarily assumed personally liability on the loan. Although Telwell dealt exclusively with Laureate and Grandbridge in connection with repayment of the loan, Telwell did not plead or prove that Grandbridge made any guarantees similar to those in ***Bennett***, ***supra***, that would subject it to personal liability on the contract. In short, Telwell failed to offer sufficient proof of a contractual relationship with Grandbridge to raise a genuine issue of material fact as to a breach of contract.

Unjust enrichment, however, is not dependent on the existence of a contractual relationship.[6] ***See Roman Mosaic & Tile Co. v. Vollrath***, 313 A.2d 305, 307 (Pa.Super. 1973) (holding the doctrine inapplicable when the parties' relationship is based on a written agreement or contract). Unjust

---

[6] Although Telwell did not specifically plead a claim entitled unjust enrichment, it pled facts that would arguably support such a cause of action. Hence, the trial court did not err or abuse its discretion in directing the parties to brief whether recovery could be premised on that legal theory.

enrichment is an equitable doctrine that imposes a duty despite the absence of an agreement, when one party is unjustly enriched at the expense of the other. In determining if the doctrine applies, the focus is on whether the defendant has been unjustly enriched. As we reaffirmed in **Lackner**, **supra**, "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." **Id**. at 24. Whether the enrichment of the defendant was unjust was deemed in **Lackner** to be the determining factor, and where the doctrine applied, the remedy was to require the defendant to make restitution in quantum meruit. **See Wilson Area School Dist. v. Skepton**, 895 A.2d 1250, 1254 (Pa. 2006) (opinion announcing the judgment of the Court) (the doctrine contemplates that "[a] person who has been unjustly enriched at the expense of another must make restitution to the other.").

The trial court concluded that Grandbridge did not retain any direct benefit conferred due to the alleged overpayment of interest since it transmitted any overpayment to PSERS. Furthermore, since Grandbridge's servicing fee was fixed rather than based on the amount collected, it was not unjustly enriched in the form of higher fees. We agree. We find **Ruddy**, **supra**, inapposite. Telwell offered no evidence that Grandbridge received any benefit, financial or otherwise, from overcharging it, and hence, no

- 14 -

recovery will lie under that theory. The facts herein are also readily distinguishable from those in *Torchia*, where the second wife both received and **retained** insurance proceeds to which she was not entitled. Absent proof that Grandbridge benefitted from the overpayment, summary judgment was properly entered on the unjust enrichment theory.

We turn now to Telwell's claim that the trial court improperly sustained a demurrer to its tort claims against Grandbridge based upon the gist of the action doctrine.

> The question presented in a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. If doubt exists concerning whether the demurrer should be sustained, then this doubt should be resolved in favor of overruling it. Our Court's standard of review of a lower court's decision granting a demurrer is de novo.

*Bruno v. Erie Ins. Co*., 106 A.3d 48 (Pa. 2014) (internal citations and quotations omitted).

Preliminarily, we agree with Grandbridge that the granting of summary judgment on the contract claims does not *ipso facto* mean that the trial court erred in dismissing the tort claims as sounding in contract. It is possible for a plaintiff to plead tort claims that are actually based on a breach of contract, but suffer summary judgment on the breach of contract due to lack of sufficient proof. That was not the case herein.

Telwell pled both contract and tort claims, a common practice since our rules permit the pleading of claims in the alternative. *See* Pa.R.C.P.

1020(c) (providing that "causes of action . . . may be pleaded in the alternative."). Grandbridge filed a preliminary objection in the nature of a demurrer seeking to eliminate the tort claims as redundant of the contract claim. It also took the position that there was no contract between the parties. The trial court was faced with a determination whether, as a matter of law, Telwell's tort claims sounded in contract and were barred by the gist of the action doctrine. The record consisted of the complaint, preliminary objections, and response to preliminary objections. Although Telwell pled that Grandbridge breached a contract, Grandbridge denied that there was any contract between itself and Telwell. Telwell maintains that it sufficiently pled tort claims to withstand a demurrer based on failure to state a claim.

We agree with Telwell that the trial court's dismissal of the tort claims based on a finding that the gist of the action was in contract was both premature and erroneous. The Supreme Court's recent decision in **Bruno**, **supra**, informs our review. Justice Todd, writing for the majority, traced the origins of the gist of the action doctrine, and reasoned that, "[i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract." **Id**. at 68 (citations omitted). "If, however, the facts establish that the claim involves the defendant's violation of a broader social

- 16 -

duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id*. (citations omitted). The Court also referenced cases where even a party to a contract was subject to liability in tort for negligently performing its obligations under the contract and causing injury or harm to the other party or to a third party.

It was far from clear at the demurrer stage that the gist of the action against Grandbridge sounded in contract and that recovery on a tort theory was impossible. Telwell pled that Grandbridge fraudulently misrepresented the amount of the monthly payment. According to the complaint, Grandbridge knew that it was overcharging Telwell, but withheld that information and continued to overcharge Telwell. Such a claim sounds in tort as it implicates the "societal duty not to affirmatively mislead or advise without factual basis." *Bruno*, *supra* at 58 (citing *Mendelsohn Drucker v. Titan Atlas Mfg*., 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012) (tort claim for fraudulent inducement of contractual relations not barred by the gist of the action doctrine since act of fraudulent misrepresentation "constitutes a breach of duty of honesty imposed by society, and not contractual duties.").

Telwell also alleged that Grandbridge negligently misrepresented the amount due. "Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to

induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." ***Bilt-Rite Contrs., Inc. v. Architectural Studio***, 866 A.2d 270, 277 (Pa. 2005). Therein, our High Court expressly adopted the Restatement (Second) of Torts § 552 ("Information Negligently Supplied for the Guidance of Others"), which imposes tort liability against one whose business is to supply information, and who knows it will influence others, but supplies it negligently. The Court also held therein that the economic loss doctrine did not apply to preclude a monetary recovery for claims of negligent misrepresentation falling within that section.

Based on the foregoing rationale, we affirm the grant of summary judgment on the contract and unjust enrichment claims. We reverse the November 7, 2011 order sustaining the demurrer and dismissing all tort claims against Grandbridge, and remand for further proceedings consistent with this opinion.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/21/2016</u>